520 S.E.2d 845

**Allen Dale BENNETT**

v.

**COMMONWEALTH of Virginia.**

**Record No. 0925–98–2.**

Court of Appeals of Virginia,
Richmond.

Nov. 16, 1999.

that husband's contribution was intended as a gift and the trial court never addressed this issue.

William J. Doran, III (Chaplin, Papa & Gonet, on brief), Richmond, for appellant.

Donald E. Jeffrey, III, Assistant Attorney General (Mark L. Earley, Attorney General; Richard B. Campbell, Assistant Attorney General, on brief), for appellee.

Present: BENTON and WILLIS, JJ., and COLE, Senior Judge.

WILLIS, Judge.

On appeal from his conviction of operating a motor vehicle while under the influence of alcohol, in violation of Code § 18.2–266, Allen Dale Bennett contends that the trial court erred (1) in refusing to decide whether the Commonwealth complied with Code § 18.2–268.2 and ruling that this issue was a jury question, and (2) in refusing to allow him to introduce evidence of the district court testimony of an absent witness, whom he had failed to summon. We reverse the judgment of the trial court on the first issue and remand the case.

On January 18, 1997, Bennett ran a red light and almost hit a police cruiser driven by Richmond City Police Officer John B. Sheppard. Officer Sheppard followed Bennett, who stopped in an alley and exited his vehicle. Bennett appeared to be intoxicated. Officer Sheppard charged him with driving while intoxicated and transported him to the police station for a breathalyzer test. Officer Sheppard administered the test several times, but Bennett failed to produce a readable breath sample. Officer Sheppard did not offer Bennett a blood test.

Bennett moved pretrial for dismissal of the charge, contending that by failing to provide him a blood test, the Common-

wealth failed to comply with Code § 18.2–268.2 and thereby denied him potentially exculpatory evidence. *See Breeden v. Commonwealth*, 15 Va.App. 148, 150, 421 S.E.2d 674, 676 (1992) (decided under former Code § 18.2–268).

Code § 18.2–268.2 provides, in relevant part:

B. Any person so arrested ... shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given.

*Id.*

At the hearing on his motion, Bennett testified that he was physically unable to take the breathalyzer test due to an asthmatic condition, that he attempted unsuccessfully to blow into the breathalyzer, and that he requested a blood test, which was denied. He argued that by denying him a blood test, the Commonwealth failed to comply with Code § 18.2–268.2 and denied him potentially exculpatory evidence. Officer Sheppard testified, however, that Bennett never stated that he had an asthmatic condition, that he attempted to circumvent the breath test by blowing around the tube, and that he never requested a blood test.

The following dialogue ensued between the trial court and defense counsel:

THE COURT: Do you have anything further? Do you want to be heard?

MR. DORAN (defense counsel): Yes, sir, just briefly. Judge, under 18.2268.2 (sic), the Commonwealth is required if the breath test is unavailable or if the individual is physically unavailable to take the breath test to administer the blood test. It's an absolute requirement.

THE COURT: Isn't that a jury question?

MR. DORAN: No, sir, I don't think so.

THE COURT: How am I going to say that, the, the officer says he was blowing out the side of the mouth and at one time, he wasn't blowing at all. Then, your client comes on

and says, well, no, I tried but it didn't work. What am I supposed to do?

MR. DORAN: I understand that there is a question of credibility there. If you choose to resolve against the defendant, you can certainly do that.

THE COURT: Well, isn't it a jury question? Isn't this something that a fact finder to decide?

MR. DORAN: No, sir. It seems to me that the statute is mandatory and if there is sufficient indication, I think the standard of proof is on the probable cause. You may reject it and say that factually we have not laid the predicate for you to call into play the mandatory language of the statute. If you do that, it's not much I can say except I appeal or otherwise.

THE COURT: Wait a minute. You are hanging your hat on the fact that he asked for a blood test?

MR. DORAN: That is right.

THE COURT: The officer said he never asked for a blood test.

\*     \*     \*     \*     \*     \*

THE COURT: Isn't this a jury question?

\*     \*     \*     \*     \*     \*

THE COURT: We will have to let the jury decide. It's not for me to decide. I can't just do that. I'm not even going to try the case. I'm just going to sit here and watch you try the case.

The order reciting the proceedings on Bennett's motion to dismiss states, in essential part:

Evidence and arguments of counsel having this day been presented on the defendant's motion to dismiss these Appeals, the Court denies said motion.

▮▮▮▮ Bennett contends on brief that the trial court erred in denying his motion to dismiss. His appeal was granted, however, on the question of whether the trial court erred in ruling that the Commonwealth's compliance with Code § 18.2–268.2 was a jury issue. We limit our analysis to the question

granted. "If this Court grants defendant's petition for appeal on certain issues, as stated in the petition, any alteration of these issues in appellant's opening brief, by . . . changing their language or wording, 'is contrary to accepted practice and is improper.' " *Iglesias v. Commonwealth,* 7 Va.App. 93, 96 n. 2, 372 S.E.2d 170, 171 n. 2 (1988) *(en banc)* (citation omitted).

■ "It is firmly established law in this Commonwealth that a trial court speaks only through its written orders." *Davis v. Mullins,* 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996). Normally, in reviewing a trial court's factual holding, we inquire whether the record contains credible evidence supporting that holding. Were that the standard of review to be applied in this case, we would affirm the trial court's dismissal of Bennett's motion. Officer Sheppard's testimony sufficiently supported that ruling.

■ However, upon the record presented in this case, our first inquiry is to identify the trial court's ruling. Its holding, embodied in the order, can be read fairly only in the context of its pronouncements from the bench. From the bench, the trial court made no ruling and directed the entry of no order addressing the merits of the motion. The order itself contains no recitation suggesting a ruling on the merits. Rather, the trial court stated plainly and repeatedly that it found the issues raised by the motion inappropriate for decision by it. It refused decision on those issues and reserved them for presentation to the jury, should Bennett so elect.[1] Plainly, the trial court's dismissal of the motion was based not upon a determination on the merits, but rather upon its refusal to entertain the motion as a preliminary matter. In so ruling, the trial court erred.

■ The credibility issue concerning compliance with Code § 18.2–268.2 was a question of fact preliminary to a ruling of law. This question necessarily required determination by the trial court. "Issues of fact are usually left to the

---

1. These issues were not presented to the jury.

jury, but there are strong reasons here for not doing so." 6 *McCormick on Evidence* § 53 (Edward W. Cleary ed., 3rd ed.1984). The motion to dismiss addressed whether the Commonwealth might prosecute the charge.

> "Questions as to the competency or admissibility of testimony ... are referred to the decision of the judge. 'As it is the province of the jury to consider what degree of credit ought to be given to evidence, so it is for the court alone to determine whether a witness is competent, or the evidence admissible. Whether there is any evidence is a question for the court; whether it is sufficient is for the jury. And whatever antecedent facts are necessary to be ascertained, for the purposes of deciding the question of competency— as, for example, whether a child understands the nature of an oath, or whether the confession of a prisoner was voluntary, or whether declarations offered in evidence as dying declarations were made under the immediate apprehension of death—those, and other facts of the same kind, are to be determined by the court, and not by the jury.' "

*Mullins v. Commonwealth,* 113 Va. 787, 791, 75 S.E. 193, 195– 96 (1912) (citations omitted).

> The action of the [trial] court in leaving evidence objected to provisionally to the jury, to be considered or rejected by them, as they might determine its admissibility or inadmissibility under the instruction given by the [trial] court, was not proper practice, as the jury has nothing to do with the admissibility of the evidence.

*Id.* *See* 7B *Michie's Jurisprudence,* Evidence § 287 (1998). "The factual determinations which are necessary predicates to rulings on the admissibility of evidence and the purposes for which it is admitted [as well as related questions] are for the trial judge and not the jury." *Rabeiro v. Commonwealth,* 10 Va.App. 61, 64, 389 S.E.2d 731, 732 (1990). *See also* C. Friend, *The Law of Evidence in Virginia,* §§ 1–5 (4th Ed. 1993). The same rule governs resolution of preliminary questions of fact underlying rulings of law by a trial court.

If the trial court believed Bennett, Code § 18.2–268.2 required dismissal of the charge. If, however, the trial court believed Officer Sheppard, the motion to dismiss should have been denied.

The trial court erred in refusing to determine the preliminary question of credibility and in refusing to rule on the merits of the motion to dismiss.

We reverse Bennett's conviction and remand the case to the trial court for retrial if the Commonwealth be so advised. We do not address Bennett's second assignment of error, that the trial court erred in refusing to admit evidence of the prior testimony of a witness whom the defense had failed to summon, as that issue is unlikely to occur at retrial.

*Reversed and remanded.*

COLE, Senior Judge, dissenting.

Because I disagree with the opinion of the majority, I dissent. Bennett was convicted of driving under the influence of alcohol with two prior convictions within ten years. On appeal, we granted his petition on the following two issues:

I. Did the trial judge err in ruling that the issue of whether the Commonwealth had complied with Code § 18.2–268.2 was a jury issue that he would not decide? [2]

---

**2.** This issue, as worded by this Court, was not specifically argued at Bennett's circuit court trial or in his petition. Bennett suggested in his petition that the trial judge "inaccurately estimated the situation as a simple comparison of competing credibilities, to be assessed by the jury instead of by the court," and he argued that the trial judge "committed reversible error in avoiding the issue." In essence, however, Bennett maintained that the trial court erroneously ruled against him and for the Commonwealth. In accordance with that argument, he presented the following question in his petition:

Did the trial court err in denying defendant's motion to dismiss the charges because he was denied the opportunity to take a blood test in violation of Code Section 18.2–268.2 of the Virginia Code? Point preserved by pretrial motion; see Tr. of 4/9/98 hearing, p. 1–22. The argument portion of his petition contains the following heading: The trial court should have dismissed the charge of driving while intoxicated against Mr. Bennett as he was in essence denied a blood test without any showing that the same was unavailable.

II. Did the court err in refusing to allow the defendant to put on evidence as to the testimony of a material witness who had testified in the [general district] court and who was shown to be unavailable in the trial court?

## ISSUE I: MOTION TO DISMISS

I disagree with the majority's resolution of the first issue because the circuit court did not rule that Bennett's physical inability to take the test was a jury issue. The trial judge decided the issue as a matter of law in the April 9, 1998 written order. The only matter submitted to the jury at the April 14, 1998 trial was whether Bennett was guilty of driving under the influence of alcohol with two prior convictions within a ten-year period. The jury found Bennett guilty of that charge. We denied the sufficiency of the evidence issue at the petition stage and found that Sheppard's testimony was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Bennett was guilty of driving under the influence of alcohol.

The general district court convictions entered on January 20, 1998, were appealed to the circuit court on or about March 26, 1998. Bennett filed a motion to dismiss the charges of driving under the influence and unreasonable refusal to submit to a breath or blood test, alleging that he agreed to take a breath test to determine the alcohol content of his blood but was advised that the results were not "satisfactory." Citing *Breeden v. Commonwealth*, 15 Va.App. 148, 150, 421 S.E.2d 674, 676 (1992), a case decided under former Code § 18.2–268, Bennett contended the Commonwealth failed to comply with

As I shall later explain, the burden was not on the Commonwealth to prove that a blood test was unavailable. Instead, the burden was on Bennett to prove he was physically unable to take the breath test.

In his brief, Bennett again maintained that the thrust of his issue was that the trial judge erred in refusing to find that he was denied a blood test. He phrased the issue, as follows:

The trial court should have dismissed the charge of driving under the influence against Mr. Bennett as he was in essence denied a blood test without any showing that the same was unavailable.

Code § 18.2–268.2 and thereby denied him potentially exculpatory evidence.

The motion to dismiss was heard by the circuit court on April 9, 1998; no jury was present. To understand the issues, it is essential to understand the law in existence on January 18, 1997, the date Bennett committed the offenses charged against him.

Prior to January 1, 1995, Code § 18.2–268.2 provided, in pertinent part, that "[a]ny person so arrested for a violation of § 18.2–268.2(i) or (ii) or both . . . shall elect to have either a blood or breath sample taken but not both." That code section was revised by the General Assembly in 1994 and became effective on January 1, 1995. The revised statute provided, in pertinent part:

Any person so arrested for a violation of § 18.2–266(i) or (ii) or both . . . shall submit to a breath test. If the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given.

*Id.*

Therefore, as of January 1, 1995, the driver's choice of which test to take was eliminated and the statute mandated that such person submit to a breath test. A blood test must be given only when a breath test is unavailable or the accused is physically unable to take one. *See id.; Lamay v. Commonwealth,* 29 Va.App. 461, 468–69, 513 S.E.2d 411, 414–15 (1999).

Because Bennett filed the motion to dismiss, he had the burden to go forward with the evidence. *See id.* at 475–76, 513 S.E.2d at 418. At the April 9, 1998 hearing on his motion to dismiss, Bennett called the arresting officer as his first witness. Sheppard testified that around midnight on January 18, 1997, he was stopped at a red light at Meadow and Main Streets in Richmond. When the light turned green for the officer, he proceeded into the intersection. Bennett ran the red light in a pickup truck, and Sheppard had to slam on his brakes to prevent a collision. Bennett failed to stop. Sheppard activated his emergency lights and siren. Within a couple of blocks, Sheppard overtook him, but Bennett contin-

ued driving. At Stafford Street, Bennett made a right turn and then turned into an alley, where he stopped and cut off the ignition.

According to Sheppard's testimony, when Bennett exited his vehicle, he "kind of bobbled, rocked back and forth between the door and the door jam on the pickup truck." He appeared unsteady on his feet, and Sheppard smelled alcohol on his breath. His eyes were red and glassy. Bennett told the officer that he had "a couple of beers," but he refused to perform the usual field sobriety tests at the request of the officer. Sheppard also testified that he transported Bennett to police headquarters and advised him of his rights under the implied consent law.

On cross-examination by the Commonwealth's Attorney, Sheppard testified that Bennett was given three opportunities to take the breath test. According to Sheppard, on the first test, Bennett "placed his lips around the plastic mouth piece and inflated his cheeks as to appear to be blowing into the machine. The machine gives you a great amount of time to attempt to give a sample. He did this for several seconds, probably 30 or 45 seconds, I believe."

After waiting the time required by law, the officer gave Bennett the test a second time. Sheppard stated that Bennett placed his lips around the mouthpiece and allowed the air to escape rather than enter the mouthpiece. The machine ran out of time and registered that it had not received an air sample. At that point, Sheppard took Bennett before a magistrate. The magistrate read Bennett the implied consent law and asked if he would consent to take the breath test. Bennett agreed to take the test. However, he did the same thing he had done with the officer. He expanded his cheeks so that the machine would not receive air. Thereupon, the magistrate cited Bennett for refusal to take the breath test.

Officer Sheppard testified that Bennett did not advise him of any physical problems that would prevent him from taking the breath test. He also testified that the machine was checked, was in proper order, was operated by a certified

operator, and that the operator advised Bennett "several times that the machine was not getting air and he needed to blow into the mouth piece." Sheppard further stated that Bennett never requested a blood test.

At the hearing, Bennett testified in his own behalf. In response to questions from his attorney, he testified that he now knew that he had a physical condition that might impact his ability to take the test, namely, bronchitis and asthma. The following dialogue occurred between Bennett and his attorney:

> [Defense Counsel]: You cannot say today you had asthma in January of 1997, Can you?
>
> [Bennett]: Just by what my doctor says, that you cannot occur [sic]. Like it's in my lungs now. If a doctor was here and put a thing on there, you could hear it in my chest when I breath [sic].

Bennett acknowledged that he did not tell the police officer or the magistrate that physical or medical problems prevented him from blowing into the breathalyzer. The reason he gave for this failure was that he was "never asked about my medical condition." In response to a question posed by the trial judge, Bennett admitted he had successfully blown into a breath machine on two previous occasions in 1989 and in 1994.

After all of the evidence at the hearing was presented, the trial judge asked Bennett if he had anything further to present. Defense counsel responded and argued that under Code § 18.2–268.2, "the Commonwealth is required if the breath test is unavailable or if the individual [is unable] to take the breath test, to administer the blood test. It's an absolute requirement."

> Following this statement, the ensuing dialogue took place:
>
> THE COURT: Isn't that a jury question?
>
> [Defense Counsel]: No, sir, I don't [think] so.
>
> THE COURT: [T]he officer says he was blowing out the side of the mouth and at one time, he wasn't blowing at all.

Then, your client comes on and says, well, no, I tried but it didn't work. What am I supposed to do?

[Defense Counsel]: I understand that there is a question of credibility there. If you choose to resolve [credibility] against the defendant, you can certainly do that.

THE COURT: Well, isn't it a jury question? Isn't this something that a fact finder [has] to decide?

I believe the resolution of this issue is not as easy as the majority suggests. It is common in almost every jury case for the judge to instruct the jurors that they are the judges of the facts, the credibility of the witnesses and the weight of the evidence. The judge, as he would be required to do from time to time, asked counsel on both sides for advice and guidance on the issue. Further, as previously stated, Code § 18.2–268.2 was amended effective as of January 1, 1995, and no cases had been decided interpreting the statute at that time. The trial judge and the attorneys did not have the benefit of *Lamay,* which was not decided until April 13, 1999, one year later. In *Lamay,* we said:

Appellant contends the trial court erred in refusing to allow testimony relating to the failure of the police to comply with the requirement that when a person is physically unable to submit to a breath test, a blood test shall be given. We have not had an opportunity to construe fully the provisions of Codes § 18.2–268.2 since its effective revision date of January 1, 1995. Therefore, this case comes before us as one of first impression and requires us to analyze Code § 18.2–268.2(B) in situations where at his or her DUI trial an accused DUI driver alleges physical inability to take a breath test. We must determine, under the limited facts of this case, what evidence is admissible, the procedure to follow, and what remedy, if any, should issue.

*Id.* at 467–68, 513 S.E.2d at 414–15 (emphasis added).

Immediately after the trial judge asked whether this was a jury issue, the following exchange occurred:

[Defense Counsel]: It seems to me that the statement is mandatory and if there is sufficient indication, I think the

standard of proof is on the probable cause. You may reject it [defendant's evidence] and say that factually we have not laid the predicate for you to call into play the mandatory language of the statute. If you do that, it's not much I can say except I appeal or otherwise.

THE COURT: Wait a minute. You are hanging your hat on the fact that he asked for a blood test?

[Defense Counsel]: That is right.

THE COURT: The officer said he never asked for a blood test.

The advice given by defense counsel was correct. The trial judge had to decide whether to believe the police officer or Bennett. If he believed the police officer, Bennett had no defense because he had failed in his burden to prove he was physically unable to take the breath test. *See id.* at 475–76, 513 S.E.2d at 418 (holding that the accused bears the burden of establishing physical inability). Thus, had the trial judge believed Sheppard, the motion to dismiss would have had to be denied, and the DUI case would proceed. If the trial judge believed Bennett, Bennett was unable to take the breath test, and he was entitled to a blood test. The failure to provide a blood test would have required dismissal.

Placed in the position of choosing between two conflicting positions, the trial judge conscientiously expressed his dilemma:

I don't know. I have never seen the man or know anything about his case. What I'm saying is I don't know what the facts are. He could have been coming from a bar or he could have been coming from a birthday party or he could have been coming from church. I don't know.

In this setting, the trial judge understandably but perhaps erroneously said: "We will have to let the jury decide."

However, I do not view the trial judge's statement as constituting an order or ruling on the motion to dismiss. He never took any action or entered any order based upon the statement. It is well understood that circuit court judges act

only through written, signed orders. *See* Rule 1:1; *Davis v. Mullins,* 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996). Nothing in this record suggests that the attorneys understood otherwise on April 9, 1998. Furthermore, judges can change their minds, and the Rules of Court give them twenty-one days to change or correct any ruling.

The statement made by the trial judge did not come at the end of or conclude the hearing on the motion to dismiss. The trial judge and counsel continued to talk about the appearance of defense witnesses for the trial scheduled on April 14, 1998. If counsel thought the judge had ruled upon the motion, which would have decided the case, they would have had no reason to discuss further proceedings that were to occur in the circuit court. After the discussion about the witness, the motion hearing was adjourned with no decision having been made. In effect, the judge took the motion under advisement.

The majority opinion apparently agrees because it states, "[f]rom the bench, the trial court made no ruling and directed the entry of no order addressing the merits of the motion." Bennett's jury trial was scheduled for April 14, 1998, five days after the hearing; therefore, no immediate ruling was required.

On the same date as the hearing, April 9, 1999, the trial judge entered an order which could not have been clearer or more explicit. He ruled and appropriately memorialized his ruling in the following signed, written order:

Evidence and arguments of counsel having this day been presented on the defendant's motion to dismiss these Appeals, the court denies said motion.

This order complies in every respect with Rule 1:1.

In its opinion, the majority states that the April 9, 1998 "order itself contains no recitation suggesting a ruling on the merits." I respectfully disagree. In the order, the trial judge explained that his ruling was based upon the evidence and arguments of counsel at the hearing held earlier that day.

The trial judge was not required to give any written explanation for his signed, written order. In *Freeman v. Peyton*, 207 Va. 194, 196, 148 S.E.2d 795, 797 (1966), Freeman contended he "was denied a full and complete hearing because the [trial] judge ruled on only the first two questions raised by [his habeas corpus] petition." Finding that Freeman failed to distinguish "between failure to rule and failure to announce reasons for a ruling," *id.*, the Supreme Court stated:

> [T]he [trial] judge ruled on all points raised in the petition. The [trial] Judge saw fit to state reasons for rejecting two of the alleged grounds for granting the writ, and he saw fit to refrain from stating reasons for rejecting the other ... alleged grounds. He may have refrained because he thought the reasons self-evident. In any event, he was not required to give his reasons.

*Id.*

The majority further states that "plainly the trial court's dismissal of the motion was based not upon a determination on the merits, but rather upon its refusal to entertain the motion as a preliminary matter. In so ruling, the trial court erred." Again, I respectfully disagree. The April 9, 1999 order is based upon the merits, and, in the order, the trial court expressly and unequivocally decided the motion as a preliminary matter, as appellant requested. The trial judge committed no error.

The only ruling made by the trial court upon the motion to dismiss was on the issue of Bennett's ability to take the breath test. Resolution of that issue rested on which witness to believe, Sheppard or Bennett. This issue relates to the previous dialogue between the trial judge and defense counsel. Defense counsel advised the judge, "I understand that there is a question of credibility there. If you choose to resolve against the defendant you can certainly do that." The trial judge accepted Sheppard's testimony that Bennett repeatedly feigned his attempts to take the breath test, and he rejected Bennett's unsubstantiated theory, raised for the first time at that hearing, that he might possibly have an asthmatic condi-

tion making him physically unable to take a breath test. That disposed of the motion to dismiss on the issue of Bennett's physical inability to take the breath test. Because Bennett failed to establish physical inability, he was not entitled to a blood test under Code § 18.2–268.2.

Moreover, had Bennett truly believed the trial judge ruled that the jury was to determine whether he was physically unable to take. the test, he would have attempted to raise that issue at trial before the jury. He did not do so. At trial, the parties confined themselves to Bennett's guilt, namely, whether he was intoxicated. Ostensibly, Bennett failed to bring the matter up at trial because he was aware of the written order denying the motion to dismiss based on the credibility determination made by the trial judge and suggested by defense counsel at the pretrial hearing. Further support for that proposition can be found in the fact that Bennett limited his question presented in his petition to the trial judge's failure to dismiss because he was denied a blood test without a showing that it was unavailable.

## II. REFUSAL TO ADMIT HEARSAY

Although the majority did not decide the second granted issue, it also is without merit. In the general district court, Bennett called Pamela Peterson as a witness. No record was made of her testimony. When the trial was scheduled in circuit court, Peterson could not be located. Bennett did not ask for a continuance. Bennett wanted to call the Commonwealth's Attorney, a court clerk, or some other person who may have been present at the district court trial, to testify as to what they could recall about Peterson's testimony. No proffer was made to the circuit court as to what their testimony would have been.

"When [evidence] is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." *Whittaker v. Commonwealth,* 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). "It is incumbent upon the proponent of the evidence to make a proffer of the

expected answer." *Speller v. Commonwealth,* 2 Va.App. 437, 440, 345 S.E.2d 542, 545 (1986). Without a proffer, "we are precluded from a consideration of this issue on appeal." *Mostyn v. Commonwealth,* 14 Va.App. 920, 924, 420 S.E.2d 519, 521 (1992). Accordingly, I cannot say the trial court's ruling was erroneous.

For all of the above-stated reasons, I would affirm the conviction.