COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton, Coleman, Elder,
          Bray, Bumgardner, Humphreys and Senior Judge Cole
Argued at Richmond, Virginia


ALLEN DALE BENNETT
                                        OPINION BY
v.    Record No. 0925-98-2        JUDGE MARVIN F. COLE
                                      AUGUST 29, 2000
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
        Thomas N. Nance, Judge

William J. Doran, III (Chaplin, Papa & Gonet,
on brief), for appellant.

Donald E. Jeffrey, III, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


Appellant, Allen Dale Bennett, appeals his conviction of

operating a motor vehicle under the influence of alcohol with

two prior convictions within ten years, in violation of Code

§ 18.2-266. He contends the trial court erred (1) in refusing

to decide whether the Commonwealth complied with Code

§ 18.2-268.2, pertaining to the administration of a breath test

to determine his blood alcohol content, and in ruling that this

issue was a jury question; and (2) in refusing to allow him to

introduce evidence from the district court testimony of an

absent witness whom he had failed to subpoena. A divided panel

of this Court reversed the conviction of driving under the

influence and remanded for a new trial.  See Bennett v.

Commonwealth, 31 Va. App. 30, 520 S.E.2d 845 (1999).  We granted

the Commonwealth's request for rehearing en banc, and upon

rehearing, we affirm appellant's conviction.

## Background

Around midnight on January 18, 1997, Richmond City Police

Officer John B. Sheppard was stopped at a red traffic light at

the intersection of Meadow and Main Streets.  When the light

changed, Sheppard pulled forward and was almost hit by Bennett's

pickup truck, which ran through the red light.  Sheppard "had to

slam on brakes" to keep from having a collision with Bennett's

vehicle, which did not stop but continued on its way.

Sheppard activated his emergency lights and siren,

accelerating to nearly fifty-five miles per hour, and caught up

with Bennett in a couple of blocks.  Sheppard pursued Bennett

until Bennett turned right on Stafford Street.  Bennett then

turned into an alley and cut off the ignition on his truck.

According to Sheppard, when Bennett exited his vehicle, he

rocked back and forth between the door and the doorjamb.  He

appeared unsteady on his feet, and Sheppard smelled alcohol on

his breath.  His eyes were red and glassy.  Bennett told the

officer that he had "a couple of beers," but he refused to

perform field sobriety tests.  Sheppard arrested Bennett for

driving under the influence of alcohol and transported him to

police headquarters, where he advised him of his rights under

the implied consent law.  Bennett agreed to take the breath test.

Sheppard administered a breathalyzer test several times, but Bennett failed to produce a satisfactory sample.  He was taken before a magistrate, who again read him the implied consent law.  Again, Bennett did not produce a satisfactory breath sample, and the magistrate charged Bennett with refusal to take the breathalyzer test.  Bennett was convicted of both charges in general district court on January 20, 1998.  These convictions were appealed to the circuit court on or about March 26, 1998.  The charge of driving under the influence of alcohol with two prior convictions in ten years was tried on April 14, 1998.

On appeal from the circuit court, we granted Bennett's petition on the following two issues:

> 1.  Did the trial court err in ruling that the issue of whether the Commonwealth had complied with Code § 18.2-268.2 was a jury issue that it would not decide?
>
> 2.  Did the trial court err in refusing to allow the defendant to put on evidence as to the testimony of a material witness who had testified in the [general district] court and who was shown to be unavailable in the trial court?

### Motion to Suppress

In the circuit court, Bennett filed a motion to dismiss the charges of driving under the influence of alcohol and unreasonable refusal to submit to a breath or blood test.

In the motion, Bennett acknowledged that at police headquarters, "he agreed to take a breath test to determine the probable alcohol content of his blood." He further alleged that after the breath test was administered, he was advised that the results were not "satisfactory." According to Bennett, he then requested, but was denied the opportunity to take a blood test in violation of Code § 18.2-268.2. He also alleged that when the Commonwealth requires a person to take a breath or blood test, the accused has a right to receive the benefits of the test, and the failure to permit the requested test deprived him of a significant method of establishing his innocence. Bennett alleged that the court should dismiss the charges against him because the Commonwealth failed to follow proper procedure at the time of his arrest in refusing to grant him a blood test.

Prior to January 1, 1995, Code § 18.2-268.2 provided, in pertinent part, that "[a]ny person so arrested for a violation of § 18.2-268.2(i) or (ii) or both . . . shall elect to have either a blood or breath sample taken but not both." That code section was amended by the General Assembly on January 1, 1995. The revised statute, in effect at the time of this incident, provides in pertinent part:

> Any person so arrested for a violation of
> § 18.2-266(i) or (ii) or both . . . shall
> submit to a breath test. If the breath test

is unavailable[1] or the person is physically
unable to submit to the breath test, a blood
test shall be given.

The motion to dismiss was scheduled for a hearing on April 9, 1998 before a judge, and the trial of the case with a jury was set for April 14, 1998.  Because Bennett filed the motion to dismiss, he had the burden to go forward with the evidence.  See Lamay v. Commonwealth, 29 Va. App. 461, 475-76, 513 S.E.2d 411, 418 (1999).  At the April 9, 1998 hearing on his motion to dismiss, Bennett called the arresting officer as his first witness.  Sheppard testified about the events that took place on January 18, 1997.  He explained how he stopped appellant's vehicle and described appellant's condition.  He further related the details of appellant's arrest.

On cross-examination by the Commonwealth's attorney, Sheppard testified that Bennett was given three opportunities to take the breath test.  According to Sheppard, on the first test, Bennett "placed his lips around the plastic mouthpiece and inflated his cheeks as to appear to be blowing into the machine. The machine gives you a great amount of time to attempt to give a sample.  He did this for several seconds, probably 30 or 45 seconds I believe."

---

[1] Bennett has not raised any issue that a breath test was not available.  The issue is whether he was physically unable to submit to it.

After waiting the time required by law, the officer gave Bennett the test a second time.  Bennett placed his lips around the mouthpiece and allowed the air to escape rather than enter the mouthpiece.  The machine ran out of time and registered that it had not received an air sample.  At that point, Sheppard took Bennett before a magistrate.  The magistrate read Bennett the implied consent law and asked if he would consent to take the breath test.  Bennett agreed to take the test.  However, he did the same thing he had done with the officer.  He expanded his cheeks so that the machine would not receive air.  Thereupon, the magistrate cited Bennett for refusal to take the breath test.

Sheppard testified that Bennett did not advise him of any physical problems that would prevent him from taking the breath test.

At the hearing, Bennett testified on his own behalf.  In response to questions from his attorney, he testified that he now knew that he had a physical condition that might impact his ability to take the test, namely, bronchitis and asthma.  The following dialogue occurred between Bennett and his attorney:

> [DEFENSE COUNSEL]:  You cannot say today you had asthma in January of 1997, can you?
>
> [BENNETT]:  Just by what my doctor says, that you cannot occur [sic].  Like it's in my lungs now.  If a doctor was here and put a thing on there, you could hear it in my chest when I breath [sic].

Bennett produced no evidence to prove he was physically unable to take the test. Bennett acknowledged that he did not tell the police officer or the magistrate that physical or medical problems prevented him from blowing into the breathalyzer. The reason Bennett gave for his failure to do so was that he was "never asked about my medical condition." In response to a question posed by the trial judge, Bennett admitted he had successfully blown into a breath machine on two previous occasions, one in 1989 and one in 1994.

After all the evidence was presented, the trial judge asked counsel if they wished to be heard. The following colloquy occurred:

> [DEFENSE COUNSEL]: Judge, under 18.2-268.2, the Commonwealth is required if the breath test is unavailable or if the individual is physically unavailable to take the breath test to administer the blood test. It's an absolute requirement.
>
> [THE COURT]: Isn't that a jury question?
>
> [DEFENSE COUNSEL]: No, sir, I don't [think] so.
>
> [THE COURT]: How am I going to say that, the officer says he was blowing out the sides of the mouth and at one time, he wasn't blowing at all. Then your client comes on and says, well, no, I tried but it didn't work. What am I supposed to do?
>
> [DEFENSE COUNSEL]: I understand that there is a question of credibility there. If you choose to resolve against the defendant, you can certainly do that.

> [THE COURT]: Well, isn't it a jury question? Isn't this something that a fact finder [must] decide?
>
> [DEFENSE COUNSEL]: No, sir. It seems to me that the statute is mandatory . . . .

The basic factual issue to be decided on Bennett's motion to dismiss was whether he faked the breath test, refusing to properly breathe into the tube, or whether he was "physically unable to submit to the breath test." The question then before the trial court was whether, under the statute, this issue was to be decided by the judge or the jury. Defense counsel's response to the trial judge was correct. It was a legal question to be decided by the trial judge. If the trial judge believed Officer Sheppard, Bennett had no defense on this issue because he had failed in his burden of proof to prove that he was physically unable to take the breath test. See Lamay, 29 Va. App. at 473, 513 S.E.2d at 417 (holding that the accused bears the burden of establishing physical inability to take the breath test). If the trial judge believed appellant's theory of the case and found he was physically unable to take the breath test, then appellant would have been entitled to a blood test and the motion to dismiss should have been granted.

Because the trial judge did not grant the motion to dismiss, he implicitly found as a fact that appellant did not establish that he was physically unable to take the breath test. The trial judge at no time entered any order holding that the

question of Bennett's physical inability to take the breath test was a jury question.  To the contrary, he decided the question was one of law to be decided by the trial judge.

It is not unusual for a trial judge to instruct jurors that they are the judges of the facts, the credibility of the witnesses, and the weight of the evidence.  The judge, as he is required to do from time to time, asked counsel on both sides for advice and guidance on the issue.  Such "brainstorming" by the trial court and counsel is an integral part of our judicial system.  Further, as previously stated, Code § 18.2-268.2 was amended effective as of January 1, 1995, and no cases had been decided interpreting the statute at that time.  The trial judge and the attorneys did not have the benefit of Lamay, which was not decided until April 12, 1999, one year later.  In Lamay we said:

> Appellant contends the trial court erred in refusing to allow testimony relating to the failure of the police to comply with the requirement that when a person is physically unable to submit to a breath test, a blood test shall be given. We have not had an opportunity to construe fully the provisions of Code § 18.2-268.2 since its effective revision date of January 1, 1995.  Therefore, this case comes before us as one of first impression and requires us to analyze Code § 18.2-268(B) in situations where at his or her DUI trial an accused DUI driver alleges physical inability to take a breath test.  We must determine under the limited facts of this case, what evidence is admissible, the

> procedure to follow, and what remedy, if
> any, should issue.

Id. at 467-68, 513 S.E.2d at 414-15 (emphasis added).

In this setting, the trial judge understandably but perhaps erroneously said: "We will have to let the jury decide."

However, we do not view the trial judge's statement as constituting an order or ruling on the motion to dismiss. He never took any action or entered any order based upon the statement. It is well understood that circuit court judges act only through written, signed orders. See Rule 1:1; Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996); see also Robertson v. Superintendent of the Wise Correctional Unit, 248 Va. 232, 235 n.*, 445 S.E.2d 116, 117 n.* (1994) (citing cases). Nothing in the record suggests that the trial judge entered any order or that the attorneys understood otherwise at the motion hearing. Furthermore, judges can change their minds, and the Rules of Court give them twenty-one days to do so.

The statement made by the trial judge at the motion hearing did not conclude the hearing. The trial judge and counsel continued to talk about the appearance of defense witnesses for the trial scheduled on April 14, 1998. If counsel thought the judge had ruled upon the motion, this would have ended the case, and they would have had no reason to discuss further proceedings that were to occur at the trial. After the discussion about the witness, the motion hearing was adjourned with no decision

having been made.  In effect, the judge took the motion under advisement.

On the same date as the hearing, April 9, 1998, the trial judge entered an order which could not have been clearer or more explicit.  He ruled and appropriately memorialized his ruling in the following signed, written order:

> Evidence and arguments of counsel having this day been presented on the defendant's motion to dismiss these Appeals, the court denied said motion.

This order complies in every respect with Rule 1:1.  Furthermore, the order shows that the trial judge accepted the testimony of the police officer that Bennett repeatedly feigned his offer to take the breath test and rejected the unsubstantiated testimony of Bennett.

The trial judge was not required to give any written explanation for his signed, written order.  In Freeman v. Payton, 207 Va. 194, 196, 148 S.E.2d 795, 797 (1966), Freeman contended he "was denied a full and complete hearing because the [trial] judge ruled on only the first two questions raised by [his habeas corpus] petition."  Finding that Freeman failed to distinguish "between failure to rule and failure to announce reasons for a ruling," id., the Supreme Court said:

> [T]he [trial] Judge ruled on all points raised in the petition.  The [trial] Judge saw fit to state reasons for rejecting two of the alleged grounds for granting the writ, and he saw fit to refrain from stating reasons for rejecting the other . . .

> alleged grounds.  He may have refrained
> because he thought the reasons self-evident.
> In any event, he was not required to give
> his reasons.

Id.

The only ruling made by the trial court upon the motion to dismiss was on the issue of Bennett's ability to take the breath test.  Resolution of that issue rested on which witness to believe, Sheppard or Bennett.  This issue relates to the previous dialogue between the trial judge and defense counsel.  Defense counsel advised the judge, "I understand that there is a question of credibility there.  If you choose to resolve against the defendant you can certainly do that."  The trial judge accepted Sheppard's testimony that Bennett repeatedly feigned his attempts to take the breath test, and he rejected Bennett's unsubstantiated theory, raised for the first time at that hearing, that he might possibly have an asthmatic condition, making him physically unable to take a breath test.  That disposed of the motion to dismiss on the issue of Bennett's physical inability to take the breath test.  Because Bennett failed to establish physical inability, he was not entitled to a blood test under Code § 18.2-268.2.

Moreover, had Bennett truly believed the trial judge ruled that the jury was to determine whether he was physically unable to take the test, he would have attempted to raise that issue at trial before the jury.  He did not do so.  At trial, the parties

confined themselves to Bennett's guilt, namely, whether he was driving under the influence of alcohol.  Ostensibly, Bennett failed to bring the matter up at trial because he was aware of the written order denying the motion to dismiss based on the credibility determination made by the trial judge and suggested by defense counsel at the pretrial hearing.

In summary, we hold that the trial judge, in his order following the motion hearing on April 9, 1998, implicitly found that Bennett feigned the taking of the breath test in order to prevent a proper breath analysis of the alcohol content of his blood and that he was not physically unable to take the breath test.  We find that the Commonwealth fully complied with Code § 18.2-268.2.  We further find that this issue was a question of law and was so decided by the trial judge and was not submitted or intended to be submitted to the jury for determination.

### Testimony of Unavailable Witness

Bennett filed a motion in limine in the circuit court, which was heard at a motion hearing on April 9, 1998, and on the morning of the trial on April 14, 1998.  He moved the court to permit the introduction of the prior testimony of Pamela Peterson, who testified in the general district court as a witness on January 20, 1998, about sixteen months before the circuit court trial.  Bennett moved that Peterson's prior testimony be presented to the jury in the form of either a stipulation or by the testimony of persons present in the

general district court who heard Peterson's testimony.  However, no transcript was made of the general district court proceeding, and no proffer is in the record showing what the testimony of any witness was.

In argument on the motion in limine, defense counsel explained that he attached a stipulation to the motion, hoping to get an agreement with the Commonwealth.  However, the Commonwealth's attorney refused to agree with the stipulation.

Further, defense counsel sought to ask Ms. Vigilance, the prosecutor in the general district court, to appear and "possibly recite what she recalls of that testimony."  The Commonwealth objected to this procedure.  Nothing in the record indicates what Ms. Vigilance recalled, if anything, or what her testimony would have been if called.

"It is well established that 'testimony given at a former trial is admissible as an exception to the hearsay rule if certain requirements are met.'"  Jones v. Commonwealth, 22 Va. App. 46, 50, 467 S.E.2d 841, 843 (1996) (citation omitted); see also Longshore v. Commonwealth, ___ Va. ___, ___, 530 S.E.2d 146, 146 (2000).  These requirements are as follows:

> "(1) The original witness must be unavailable.  (2) The witness who is now unavailable must have been testifying under oath (or affirmation) at the former trial.  (3) The issues must be substantially the same in both trials.  (4) The party against whom the hearsay testimony is now offered (or his privy in interest) must have been a party in the former trial.  (5) The witness

who is now testifying as to what was said at the former trial must be able to do so with reasonable accuracy."

Doan v. Commonwealth, 15 Va. App. 87, 100, 422 S.E.2d 398, 405 (1992) (citation omitted).  The party offering the testimony bears the burden of establishing the witness' unavailability.  See Jones, 22 Va. App. at 50, 467 S.E.2d at 843.

"'[A] declarant is unavailable if the party seeking to introduce the statement has been unable by diligent inquiry to locate the declarant.'"  Cooper v. Commonwealth, 26 Va. App. 537, 542, 496 S.E.2d 77, 79 (1998) (citation omitted).  We have held that reasonable or "due diligence is that amount of prudence 'as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances.'"  McDonnough v. Commonwealth, 25 Va. App. 120, 128, 486 S.E.2d 570, 574 (1997) (citation omitted).  This standard "requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted."  Id. at 129, 486 S.E.2d at 574.  Furthermore, "it is well established that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial [judge], and, in the absence of a showing that such discretion has been abused, will not be interfered with on appeal."  Burton v. Oldfield, 195 Va. 544, 550, 79 S.E.2d 660, 665 (1954).

In _Doan_, we explained that, "for a witness to be deemed unavailable, the proponent of the evidence bears the burden of proving . . . that one of the following conditions exists:

> (1) The declarant is dead; (2) The declarant is too ill to testify; (3) The declarant is insane; (4) The declarant is absent from the state and the party is unable to obtain the declarant's deposition; (5) The party has been unable by diligent inquiry to locate the declarant; (6) The declarant cannot be compelled to testify; and (7) The opposite party has caused the declarant's absence."

_Doan_, 15 Va. App. at 101, 422 S.E.2d at 406.

At the April 9, 1998 motion hearing, appellant testified regarding Peterson's unavailability. Bennett contends that he met his burden under _Doan_ and established Peterson's unavailability, so that her testimony should have been presented to the jury. We look to the facts to determine whether Bennett was unable by diligent inquiry to locate the witness.

At the time of the January 20, 1998 general district court trial, Peterson lived with friends in Hampton. Bennett and his mother picked her up and transported her to court. After the trial, she was taken to the bus station and returned to Hampton by bus. A week later, Peterson contacted Bennett and gave him her telephone number and address.

After obtaining the circuit court trial date, Bennett called Peterson's telephone number and a man answered. He said Peterson no longer lived there. When asked where he could "get in touch with her," the man told Bennett he could try her place

of employment at Bilo's in Newport News.  Bennett tried several times to contact her at Bilo's by telephone, but the company would not give him any information about Peterson.

Three weeks prior to the trial, Peterson called Bennett's wife, but his wife was ill.  Peterson said she would call back but did not do so.

Bennett never made any attempt to locate Peterson in person at her place of employment.  He relied on Peterson to contact him rather than attempting to locate her in the Hampton area. Bennett did not subpoena her at her last place of residence or at her place of employment.  The only excuse given for not issuing a subpoena was that he did not know her address. Peterson had friends in the Hampton area because Bennett picked her up at their home for the general district court trial.  He made no effort to contact any of them to locate her.

Based on this evidence, the trial judge ruled that reasonable or due diligence had not been exercised and that appellant failed to prove Peterson was unavailable.  After reviewing the record before us, we cannot say the trial judge abused his discretion.

In Doan, we said that "'[t]he witness who is now testifying as to what was said at the former trial must be able to do so with reasonable accuracy.'"  Id. at 100, 422 S.E.2d at 405 (citation omitted).  In this case, we do not know who the witness would be.  Defense counsel suggested that the former

prosecutor, Ms. Vigilance, might testify concerning what Peterson's testimony might have been.  However, nothing in this record proves that Ms. Vigilance recalled the Peterson testimony with reasonable accuracy.

The trial judge refused to admit the evidence proposed by Bennett because he failed to prove the former witness was unavailable.  The trial judge also found the proposed evidence was speculative.  We agree with these rulings.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>

Coleman, J., with whom Benton and Elder, JJ., join, dissenting, in part, and concurring, in part.

A panel of this Court reversed the defendant's conviction for a second or subsequent offense of driving while intoxicated because the trial court erroneously ruled that the jury, rather than the trial judge, had to decide whether the defendant was "physically unable to submit to the breath test" and thereby entitled to a blood test as provided by Code § 18.2-268.2(B). See Bennett v. Commonwealth, 31 Va. App. 30, 520 S.E.2d 845 (1999). In support of its decision reversing the trial court, the panel set forth the dialogue between defense counsel and the judge at the hearing on the motion to dismiss that led up to the trial court's erroneous ruling, "We will have to let the jury decide [that issue]."[2] Based upon that dialogue, the panel

---

[2] The following dialogue ensued between the trial court and defense counsel:

> THE COURT: Do you have anything further? Do you want to be heard?
>
> MR. DORAN (defense counsel): Yes, sir, just briefly. Judge, under 18.2268.2 [sic], the Commonwealth is required if the breath test is unavailable or if the individual is physically unavailable to take the breath test to administer the blood test. It's an absolute requirement.
>
> THE COURT: Isn't that a jury question?
>
> MR. DORAN: No, sir, I don't think so.
>
> THE COURT: How am I going to say that, the, the officer says he was blowing out the side of the mouth and at one time, he wasn't blowing at all. Then, your client comes on

concluded that the trial judge ruled that the issue was a

factual question for the jury and, therefore, denied the motion

to dismiss.

---

and says, well, no, I tried but it didn't work.  What am I supposed to do?

MR. DORAN:  I understand that there is a question of credibility there.  If you choose to resolve against the defendant, you can certainly do that.

THE COURT:  Well, isn't it a jury question?  Isn't this something that a fact finder to decide?

MR. DORAN:  No, sir.  It seems to me that the statute is mandatory and if there is sufficient indication, I think the standard of proof is on the probable cause.  You may reject it and say that factually we have not laid the predicate for you to call into play the mandatory language of the statute.  If you do that, it's not much I can say except I appeal or otherwise.

THE COURT:  Wait a minute.  You are hanging your hat on the fact that he asked for a blood test?

MR. DORAN:  That is right.

THE COURT:  The officer said he never asked for a blood test.

     *      *      *      *      *      *      *

THE COURT:  Isn't this a jury question?

     *      *      *      *      *      *      *

THE COURT:  We will have to let the jury decide.  It's not for me to decide.  I can't just do that.  I'm not even going to try the case.  I'm just going to sit here and watch you try the case.

Now, a majority of the Court disregards the clear ruling of the trial judge by characterizing it as an "understandabl[e] but perhaps erroneous[] [statement]."  Inexplicably, the majority further holds that the trial judge "implicitly" ruled on the merits of the motion to dismiss and found that Bennett was not physically unable to submit to the breath test.  The record contains not the slightest suggestion that the trial judge found that the defendant was not physically unable to submit to the breath test.  The trial judge denied the motion to dismiss because he decided it was an issue for the jury, not because he decided the merits of the motion.  Accordingly, I respectfully disagree with the majority's opinion and dissent from that holding.[3]

I would reverse and remand to the trial court with directions for the court to conduct an evidentiary hearing on the motion to dismiss and to rule on that motion.  If the trial court finds by a preponderance of the evidence that the defendant was able to submit to a breath test and denies the motion, the judgment of the jury should be reinstated.  However, if the trial judge finds that the defendant was unable to submit to the breath test and was denied a blood alcohol test, the motion to dismiss should be granted.  See Lamay v. Commonwealth, 29 Va. App. 461, 476, 513 S.E.2d 411, 418 (1999).

---

[3] I concur in the majority's opinion on "The Unavailable Witness."

The analysis in support of my dissent in this case is ably set forth in the panel's opinion authored by Judge Willis, who has approved my adopting it verbatim:

The order reciting the proceedings on Bennett's motion to dismiss states, in essential part:

> Evidence and arguments of counsel having this day been presented on the defendant's motion to dismiss these Appeals, the Court denies said motion.

\*      \*      \*      \*      \*      \*      \*

"It is firmly established law in this Commonwealth that a trial court speaks only through its written orders." Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996). Normally, in reviewing a trial court's factual holding, we inquire whether the record contains credible evidence supporting that holding. Were that the standard of review to be applied in this case, we would affirm the trial court's dismissal of Bennett's motion. Officer Sheppard's testimony sufficiently supported that ruling.

However, upon the record presented in this case, our first inquiry is to identify the trial court's ruling. Its holding, embodied in the order, can be read fairly only in the context of its pronouncements from the bench. From the bench, the trial court made no ruling and directed the entry of no order addressing the merits of the motion. The order itself contains no recitation suggesting a ruling on the merits. Rather, the trial court stated plainly and repeatedly that it found the

issues raised by the motion inappropriate for decision by it.
It refused decision on those issues and reserved them for
presentation to the jury, should Bennett so elect.[4]  Plainly, the
trial court's dismissal of the motion was based not upon a
determination on the merits, but rather upon its refusal to
entertain the motion as a preliminary matter.  In so ruling, the
trial court erred.

The credibility issue concerning compliance with Code
§ 18.2-268.2 was a question of fact preliminary to a ruling of
law.  This question necessarily required determination by the
trial court.  "Issues of fact are usually left to the jury, but
there are strong reasons here for not doing so."  6 McCormick on
Evidence § 53 (Edward W. Cleary ed., 3rd ed. 1984).  The motion
to dismiss addressed whether the Commonwealth might prosecute
the charge.

> "Questions as to the competency or
> admissibility of testimony . . . are
> referred to the decision of the judge.  'As
> it is the province of the jury to consider
> what degree of credit ought to be given to
> evidence, so it is for the court alone to
> determine whether a witness is competent, or
> the evidence admissible.  Whether there is
> any evidence is a question for the court;
> whether it is sufficient is for the jury.
> And whatever antecedent facts are necessary
> to be ascertained, for the purposes of
> deciding the question of competency -- as,
> for example, whether a child understands the
> nature of an oath, or whether the confession
> of a prisoner was voluntary, or whether

---

[4] These issues were not presented to the jury.

> declarations offered in evidence as dying
> declarations were made under the immediate
> apprehension of death -- those, and other
> facts of the same kind, are to be determined
> by the court, and not by the jury.'"

Mullins v. Commonwealth, 113 Va. 787, 791, 75 S.E. 193, 195-96 (1912) (citations omitted).

> The action of the [trial] court in
> leaving evidence objected to provisionally
> to the jury, to be considered or rejected by
> them, as they might determine its
> admissibility or inadmissibility under the
> instruction given by the [trial] court, was
> not proper practice, as the jury has nothing
> to do with the admissibility of the
> evidence.

Id. See 7B Michie's Jurisprudence, Evidence § 287 (1998). "The factual determinations which are necessary predicates to rulings on the admissibility of evidence and the purposes for which it is admitted [as well as related questions] are for the trial judge and not the jury." Rabeiro v. Commonwealth, 10 Va. App. 61, 64, 389 S.E.2d 731, 732 (1990). See also C. Friend, The Law of Evidence in Virginia, §§ 1-5 (4th Ed. 1993). The same rule governs resolution of preliminary questions of fact underlying rulings of law by a trial court.

If the trial court believed Bennett, Code § 18.2-268.2 required dismissal of the charge. If, however, the trial court believed Officer Sheppard, the motion to dismiss should have been denied.

The trial court erred in refusing to determine the preliminary question of credibility and in refusing to rule on the merits of the motion to dismiss.

For these reasons, I dissent from the majority's decision on the motion to dismiss and would reverse and remand with directions for the trial court to hear and rule upon the motion to dismiss.