COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Elder and Fitzpatrick
Argued at Richmond, Virginia


AUDLEY C. McDONNOUGH
                                              OPINION BY
v.         Record No. 2947-95-2    JUDGE SAM W. COLEMAN III
                                           JUNE 24, 1997
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                     Donald W. Lemons, Judge

          Stephen T. Harper (Bradford F. Johnson;
          Johnson & Walker, P.C., on brief), for
          appellant.

          Steven A. Witmer, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     The defendant, Audley McDonnough, was convicted in a jury

trial of possessing cocaine and distributing cocaine.  On appeal,

he contends the trial court erred by admitting into evidence the

hearsay statement of the person to whom he sold the drugs.  The

court admitted the statement under the "declaration against

interest" exception to the hearsay rule.  The defendant asserts

the Commonwealth failed to prove that the declarant was

unavailable to testify at trial or that the declarant's statement

was against his penal interest.  The defendant also asserts that

admission of the statement violated his Sixth Amendment right of

confrontation.

     The evidence fails to prove that the Commonwealth issued a

subpoena for the hearsay declarant, who was known to have

recently resided in Richmond.  We hold, therefore, that the

evidence fails, as a matter of law, to support the trial court's findings that the Commonwealth exercised due diligence in attempting to obtain the declarant's presence at trial and that the declarant was "unavailable." However, because the other evidence of the defendant's guilt is overwhelming, we hold that the error in admitting the declarant's hearsay statement was harmless. Accordingly, we affirm the defendant's convictions.[1]

On appeal we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). While Richmond City Police Officer Schnupp was conducting surveillance in the 3400 block of East Marshall Street in Richmond, he observed the defendant engaged in what appeared to be drug transactions from the porch of a house. Between 8:00 and 9:00 p.m., Officer Schnupp observed three or four individuals approach and speak with the defendant on the porch. After some discussion with each person, the defendant would place a plastic bag containing a rock-like object on the porch. The individual would then pick up the bag containing the rock-like object and place down cash which the defendant would retrieve after the person left. After each transaction, the defendant would go inside the house, a light would come on briefly upstairs, and then the light would go off

---

[1] Because the trial court erred by admitting the hearsay statement, we need not decide whether the statement was against the declarant's penal interest.

- 2 -

before the defendant would reappear on the porch. Schnupp described the defendant as a black male with dreadlocks wearing a red University of Maryland sweatshirt, glasses, a stud earring in his left ear and a dark hat. This description matched the defendant's appearance when he was arrested later that evening.

Around 9:00 p.m., a dark-colored Renault stopped and a white male, later identified as Robert Henshaw, exited the automobile and went to the house. The defendant stepped down from the porch, approached Henshaw, and handed him a plastic baggie in exchange for money. As Henshaw drove away, Officer Schnupp called for a "takedown" unit to apprehend Henshaw and for another unit to arrest the defendant.

Henshaw was stopped in his car about ten seconds after Officer Schnupp ordered the "takedown" call. There were three other occupants in Henshaw's car. Henshaw consented to be searched, and, as a result the officers found a glass pipe and a plastic baggie containing a rock of cocaine in Henshaw's jacket pocket. A search of the other occupants disclosed no drugs. After Henshaw's arrest, he told the police that he had just bought the cocaine from a black male, approximately twenty-three years old, with dreadlocks, wearing a red sweatshirt, and that he paid $25 for it. Henshaw told the police that he had purchased cocaine from this person "about a hundred times." The police officer transcribed Henshaw's statement and Henshaw signed it.

Several hours after Henshaw's arrest, the police executed a

- 3 -

search warrant at the Marshall Street house where the defendant had engaged in the transactions. In the bedroom where Officer Schnupp had observed the light go on and off, the police officers found a locked tackle box containing four bags of cocaine, a set of digital scales, and a small black purse. They also found a shoe and a pair of jeans containing cocaine and $214 in cash. Corey Jones, the owner of the house, initially told police that the drugs found in the house were his, however, at trial, he testified that the cocaine in the tackle box belonged to the defendant and that the defendant had given him cocaine to sell. Jones said that the defendant had the key to the tackle box and did not allow Jones to open it.

In a search of the defendant incident to his arrest, the police found $621 in cash, a pager, and a wallet containing two keys. One of the keys fit the lock on the tackle box found in the bedroom of the house.

## "DECLARATION AGAINST INTEREST" HEARSAY EXCEPTION

In order to fall under the "declaration against interest" exception to the hearsay rule, the party offering the statement must prove that the declarant is unavailable, that the statement was against the declarant's interest at the time it was made, and that the declarant was aware, at the time the statement was made, that it was against his interest. Boney v. Commonwealth, 16 Va. App. 638, 643, 432 S.E.2d 7, 10 (1993); 2 Charles E. Friend, The Law of Evidence in Virginia, § 18-12 (4th ed. 1993). "The party

offering the hearsay testimony has the burden of establishing the witness' 'unavailability.'  Determining whether the offering party has met its burden and, thus, whether the declarant is 'unavailable,' is left to the trial court's discretion."  Jones v. Commonwealth, 22 Va. App. 46, 50, 467 S.E.2d 841, 843 (1996) (citations omitted).

In Virginia, a declarant is unavailable if the party seeking to introduce the statement has been unable by diligent inquiry to locate the declarant.  See Doan v. Commonwealth, 15 Va. App. 87, 101, 422 S.E.2d 398, 406 (1992); Friend, supra, § 18-9.  Whether a party has used due diligence is a factual question that will be reversed on appeal only if it is plainly wrong or without evidence to support it.  See Wise Terminal Co. v. McCormick, 107 Va. 376, 379, 58 S.E. 584, 585 (1907); Doan, 15 Va. App. at 102, 422 S.E.2d at 406.

Here, in order to prove that Henshaw was unavailable, the Commonwealth had the burden of showing that it exercised due diligence in attempting to locate Henshaw in order to have him testify at trial.  The record does not indicate that the Commonwealth had a subpoena issued for Henshaw.  The Commonwealth called two witnesses to prove that they had been diligent in attempting to locate Henshaw and have him "available" at trial. Officer Zohab testified that five "informants" had been searching for Henshaw for one month before trial.  Zohab also testified that he had asked several officers who knew Henshaw to look for

him.  Additionally, Officer Zohab had information that Henshaw had been staying in several hotels on Richmond's northside, so he went to those hotels in an attempt to locate Henshaw, without success.  On cross-examination, Officer Zohab admitted that he had not gone to Henshaw's last known address, but he testified that he knew that address to be "bad."  The officer also acknowledged that he did not check with Henshaw's probation officer, even though he knew that Henshaw had been in jail within the last year for violating probation.  Officer Zohab testified that he did not know whether Henshaw was on probation at the time he was trying to locate him for this case.  Officer Zohab acknowledged that he had seen Henshaw within the last "two or three" months before trial.

Officer Hines testified that he went to Henshaw's last known address approximately three weeks before trial and was told that Henshaw no longer lived there.  He also attempted to locate Henshaw by driving around Henshaw's former neighborhood at night.

After the trial judge heard Officers Zohab's and Hines' testimony, he ruled that the Commonwealth had exercised due diligence in trying to locate Henshaw.  Thus, he held that Henshaw's hearsay statement describing the person from whom he had purchased cocaine, which was essentially identical to Officer Schnupp's description of the defendant, was admissible under the "declaration against interest" exception to the hearsay rule.

Due diligence is that amount of prudence "as is properly to

be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances."  Black's Law Dictionary 457 (6th ed. 1990).  See also State v. Armstrong, 771 P.2d 889, 890 (Ariz. Ct. App. 1989) ("Although the question of due diligence necessarily turns upon the details of each case, the standard is constant:  whether the state took reasonable steps to locate the accused based upon all of the information that it possessed.").  Due diligence requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted.  See, e.g., People v. Watkins, 530 N.W.2d 111, 113 (Mich. Ct. App. 1995); Commonwealth v. Cottman, 476 A.2d 40, 42 (Pa. Super. Ct. 1984).  Thus, although the circumstances arguably may have required the police to contact Henshaw's probation officer in their efforts to locate him, that omission alone is not fatal to the determination that the Commonwealth exercised due diligence.

We hold, however, that due diligence requires, at a minimum, that a party attempt to subpoena the witness or provide a reasonable explanation why a subpoena was not issued.  When the evidence proves that the issuance of a subpoena would be of no avail because the witness is deceased, incompetent, or beyond the reach of the court, then in those or similar circumstances the party is not required to engage in a futile act.  But, an effort by a party, either the Commonwealth or a defendant, to locate a witness or obtain a promise from a witness to appear without

attempting to subpoena the witness cannot be considered due diligence in the absence of an explanation of the reason that the subpoena cannot be served. See State v. Terry, 359 So. 2d 172, 173 (La. 1978) ("Generally, the 'due diligence' requirement . . . is not satisfied when defense counsel fails to have the potential witness subpoenaed."); John W. Strong, 2 McCormick on Evidence § 253(a), at 134 (4th ed. 1992). We have applied a similar requirement for establishing due diligence in order to obtain a continuance due to the absence of a material witness. In Cherricks v. Commonwealth, we said "[h]ad the witness in fact not been subpoenaed, the appellant would be in no position to dispute the denial of a continuance. Such a lack of [due] diligence on his part would bar him from contesting the trial court's ruling." 11 Va. App. 96, 100, 396 S.E.2d 397, 400 (1990). See also Shiflett v. Commonwealth, 218 Va. 25, 30, 235 S.E.2d 316, 319-20 (1977) (holding that accused did not exercise due diligence in obtaining witness for trial by issuing a subpoena two days before trial). Here, we are very mindful of the fact that the Commonwealth provided an explanation of extensive efforts by "informants" and Officers Zohab and Hines to locate Henshaw. However, their difficulty or inability in locating him does not provide a reason or explanation as to why the issuance of a subpoena would be futile. Furthermore, to the extent that Henshaw might have been avoiding the officers who had arrested him or the "informants" attempting to locate him in order not to

be called as a witness, the issuance of a subpoena may have been a more effective means of locating him.  Moreover, an officer charged with the duty of serving a subpoena may determine whether a witness has a new address, can be located in another jurisdiction, or is subject to process in another state or country.  Although an officer with a subpoena may have accomplished no more than Officers Zohab and Hines, the issuance of a subpoena assures an effort by law enforcement authorities in the Commonwealth to secure the presence of witnesses.

Rule 3A:12(a) provides that a subpoena may be issued ordering the attendance of witnesses in criminal cases.  A subpoena for a witness is a judicial order directed to law enforcement officers to "summon the witness to appear at the time and place specified in the subpoena for the purpose of giving testimony . . . ."  Rule 3A:12(a).  Because a subpoena is a court's order, it carries with it the force and command of the state to find the witness and order the witness to appear; it carries more force than a request from a police officer or the Commonwealth's attorney or defense counsel for a witness to appear in court on a date certain.  Although the testimony of Officers Zohab and Hines proved that considerable effort was made to locate Henshaw, we hold that the evidence is insufficient as a matter of law to prove that the Commonwealth made a good faith reasonable effort in the absence of proof that a subpoena was issued or a reasonable explanation as to why the issuance of a

subpoena would have been futile.  The issuance of a subpoena alone, in the absence of other efforts to locate and secure the attendance of a witness, will not establish due diligence, but the issuance of a subpoena or proof as to why it would be a futile act is necessary to prove that a party was diligent in obtaining a witness' attendance.  Accordingly, the trial court erred in finding that the Commonwealth had used due diligence to locate the witness and in ruling that the witness was unavailable.

## SIXTH AMENDMENT RIGHT OF CONFRONTATION

"[T]he Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right . . . made obligatory on the States by the Fourteenth Amendment."  Pointer v. Texas, 380 U.S. 400, 403 (1965).  "[W]hen one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination."  Lee v. Illinois, 476 U.S. 530, 541 (1985).  "But where proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied."  White v. Illinois, 502 U.S. 346, 356-57 (1992); see also Raia v. Commonwealth, 23 Va. App. 546, 549, 478 S.E.2d 328, 331 (1996).  "Where the [hearsay] exception does not require unavailability, it is unlikely that the [Supreme] Court will hold that the

Constitution requires it. Where the [hearsay] exception requires unavailability, the [Confrontation] clause will also require such a finding and will likely require a more rigorous demonstration by the prosecution than by other parties." McCormick on Evidence, supra, § 252, at 128.

Here, we will assume without deciding that the admission of Henshaw's hearsay statement without sufficient proof of Henshaw's unavailability violated the Confrontation Clause. See Barber v. Page, 390 U.S. 719, 724-25 (1968) ("In short, a witness is not 'unavailable' for purpose of the ['prior testimony under oath'] exception to the confrontation requirement unless the prosecutorial authorities have made a good faith effort to obtain his presence at trial."). However, a violation of the defendant's Sixth Amendment confrontation rights does not "foreclose the possibility that this error was harmless when assessed in the context of the entire case against [McDonnough]." Lee, 476 U.S. at 547.

### HARMLESS ERROR

Although the trial court erred by admitting Henshaw's statement, we find the error to have been harmless. "A defendant is entitled to a fair trial but not a perfect one." Lutwak v. United States, 344 U.S. 604, 619 (1953). "Even though testimony is objectionable as hearsay, its admission is harmless error when the content of the extrajudicial declaration is clearly established by other evidence." Schindel v. Commonwealth, 219

Va. 814, 817, 252 S.E.2d 302, 304 (1979).

Furthermore, assuming that the admission of Henshaw's statement violated the Confrontation Clause, the error was still harmless. "Constitutional error . . . is harmless only when the reviewing court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991). "[T]he appellate court must determine on the basis of its own reading of the record the probable impact of the evidence on the minds of the jury and whether the admission was sufficiently prejudicial to require reversal." Arnold v. Commonwealth, 4 Va. App. 275, 282, 356 S.E.2d 847, 851 (1987).

Henshaw's admission that he purchased cocaine and his description of the defendant as the person from whom he purchased the drugs proved that a sale of cocaine had, in fact, taken place and effectively identified the defendant as the person who sold him the cocaine. Although this hearsay evidence is prejudicial in that it is direct evidence proving that a drug sale occurred, the remaining evidence which proves that the defendant sold Henshaw cocaine is overwhelming. Officer Schnupp, who was watching the house, observed the defendant selling what appeared to be a rock-like object to several individuals, including Henshaw, on the night in question. Within ten seconds of having observed a transaction between the defendant and Henshaw, Henshaw was stopped and found to be in possession of a rock-like object

- 12 -

that proved to be cocaine.  The officer gave an accurate description of the defendant on that night and identified the defendant as the person he had seen make the sales.  Moreover, Corey Jones testified that the defendant had been selling cocaine and was the owner of the cocaine found in the tackle box in the house when the search warrant was executed.  A key found on the defendant fit the tackle box in which the police found cocaine and other drug paraphernalia.  Other sales by the defendant of a similar nature in which Officer Schnupp had observed the defendant exchange a rock-like substance for money had occurred in the preceding hour.  On these facts, no reasonable fact finder could have found that a reasonable doubt existed as to whether the defendant sold cocaine to Henshaw.

Due to the overwhelming evidence of the defendant's guilt, we hold that the admission of Henshaw's statement in this case constituted harmless error.  Thus, we affirm the defendant's convictions.

<u>Affirmed</u>.