COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia


KEVIN TYLER

v.      Record No. 0888-21-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
AUGUST 2, 2022


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Kevin Tyler ("Tyler") appeals his conviction in the Circuit Court of the City of Norfolk

("trial court") for strangulation. On appeal, Tyler argues that the prior testimony of the victim

was erroneously admitted and that the evidence was insufficient to convict him of strangulation.

For the following reasons, we affirm.

I. BACKGROUND

On appeal, "[w]e . . . view the evidence in the light most favorable to the prevailing party,

the Commonwealth, with all inferences fairly deducible from that evidence accorded to the

Commonwealth." *McArthur v. Commonwealth*, 72 Va. App. 352, 359 (2020) (citing *Hill v.*

*Commonwealth*, 297 Va. 804, 808 (2019)).

Tyler was accused of committing domestic violence against Tishayla Moore ("Moore"),

his ex-girlfriend who was pregnant with their child. Tyler's trial, initially scheduled for January

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

27, 2021, on charges of strangulation, abduction, and attempted malicious wounding of a pregnant woman, was continued to March 4, 2021. Although subpoenas were issued for the new trial date, the new date apparently never made it onto the trial court's docket. As a result, the trial was continued again to March 17, 2021. Moore was subpoenaed again but failed to appear for either of the continued trial dates. When several witnesses failed to appear on the March 17 trial date, the trial court suggested that her failure to appear at the March 17 trial date may have resulted from faulty service of the subpoena, but later found that the Commonwealth had posted service for every trial date.[1] The Commonwealth proffered that Moore indicated in her last conversation with the Commonwealth that she was planning to continue cooperating and appearing in court as a witness, but following that conversation the Commonwealth had been unable to contact her. The Commonwealth further proffered that it had made several calls to Moore's phone but only secured "a busy signal or a message that it was unable to receive the call." It had also filed a domestic violence information request to try to locate her.

Based on this information, the trial court continued the trial again to April 5, 2021. The Commonwealth posted service to Moore's last known residence, sent police officers to her last known residence to attempt to see if she still lived there, called the phone number it previously used to communicate with Moore, reached out to victim's advocates for information on her whereabouts, and requested that investigators check their databases for any updated contact information—all to no avail. Before the April 5 trial date, fearing Moore would be unavailable to testify, the Commonwealth filed a motion to admit the transcript of Moore's testimony from the preliminary hearing. The Commonwealth asserted in its motion that it had made "numerous

---

[1] On March 17, the clerk indicated that returns of service had only been filed in the clerk's office for the subpoenas issued for the January 27 date, not for the March 4 or March 17 date. However, in the letter opinion the trial court eventually issued, it recited as a factual matter that the Commonwealth had posted service for the March 4, March 17, and April 5 trial dates.

attempts to locate this witness without success" through "victim witness advocates, the prosecutor, and through the Commonwealth investigators."

Tyler opposed the motion, arguing that the Commonwealth's attorney had failed to show that Moore's social media had been checked, or that any attempt had been made to contact Moore through an individual who had accompanied her to the hospital (whose name and phone number were available through the 911 transcript) or through Moore's mother. The defense also criticized the police for only attempting to contact Moore at her home once and the Commonwealth for not even knowing what time of day the police had gone to her residence. The Commonwealth responded that a previous attempt to contact her that way had been successful in that it had prompted Moore to contact the Commonwealth shortly thereafter. The Commonwealth further proffered that it was unaware of anything that would have indicated Moore was "going to withdraw her cooperation." Tyler also raised a Confrontation Clause argument, disputing whether Moore had been adequately cross-examined at the preliminary hearing. The trial court took the issue of admission of the preliminary hearing testimony into evidence under advisement and proceeded to trial.[2] Neither the Commonwealth nor Tyler requested a continuance of the trial to permit further attempts to secure the witness's presence at the trial.

In the transcript of Moore's prior testimony at the preliminary hearing, she testified that she and Tyler argued one night because she wanted to break up with Tyler. She was six months pregnant with his child at the time. She further testified that the next day, while she was talking to a friend on her phone, Tyler came into the room, got mad, hit her, punched her in the stomach four times, and choked her for about one minute. She also testified that she could "not really"

---

[2] The trial court considered the transcript during the trial but told the parties it would not make a final ruling on admissibility until it had time to consider the legal arguments more thoroughly.

- 3 -

breathe and demonstrated how he had choked her by placing "her hand around the front of her throat." She said that she tried to speak to Tyler while being choked, but she could not; nevertheless, at some point she screamed for help. She further stated that while he was punching her, he said she was going to have a miscarriage. Eventually, she escaped to a friend's house and called the police, but only after Tyler initially refused to let her leave.

Moore also identified several exhibits introduced at the preliminary hearing. Those exhibits included photographs of her injuries, which she testified were accurate and showed bruising and scratches on her chest. They also included photographs of texts from Tyler indicating he tried to apologize and wanted to give up his parental rights in exchange for her dropping the charges. Moore also testified that she had marks and bruises on her neck.

Following opening statements, the Commonwealth called Detective Joshua Miller ("Detective Miller") who testified that he was called to DePaul Hospital to investigate potential domestic violence. Detective Miller interviewed Moore at the hospital and said that she was "confused," "sad," and "out of it." Although defense counsel objected when Detective Miller testified to some of what Moore told him, it later came out during cross-examination—without objection from either side—that Moore told Detective Miller that Tyler strangled her, punched her in the stomach more than six times, and said he would "cause her to have an abortion." Detective Miller also said that he saw irritation on her belly that a photograph would not have accurately captured or portrayed. Lastly, he testified that Moore told him that Tyler had prevented her from leaving the apartment.

Detective Miller also noticed "some scratches around her neck, on her chest, and that's basically it," before taking several photographs that were introduced into evidence at the trial. The photographs showed some bruising and scratches on Moore's neck and chest and one photograph showed that Moore's top was slightly torn. Detective Miller next testified that he

- 4 -

saw fingerprints on and around the injuries even though they did not appear in the photographs, and he said that the injuries were such that "[a]nybody . . . would know that something had happened and some sort of an assault may have taken place." Detective Miller then ordered the performance of a forensic strangulation exam and testified that the exam produced additional photographs of Moore's neck injuries. Those photographs were also introduced into evidence and showed bruising on the side and back of Moore's neck. Finally, Detective Miller took a second statement from her several days later and confirmed that her story then was consistent with what she had told him during the initial interview.

The trial court took the entire case under advisement at the end of the trial and issued a written ruling three days later. The trial court later admitted the transcript into evidence, convicted Tyler of strangulation, and dismissed the remaining charges. The trial court also specifically held that "the Commonwealth has exercised due diligence to secure Ms. Moore's presence at trial, with multiple subpoenas posted at her residence and several attempts to reach her using the same telephone that they have used quite recently as well as an attempted personal visit to her home." The trial court rejected Tyler's Confrontation Clause argument.

## II. STANDARDS OF REVIEW

We "review[] a trial court's evidentiary rulings for abuse of discretion." *Graves v. Shoemaker*, 299 Va. 357, 361 (2020) (citing *Hyundai Motor Co. v. Duncan*, 289 Va. 147, 155 (2015)). "Only when reasonable jurists could not differ can [an appellate court] say an abuse of discretion has occurred." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "[T]he phrase 'abuse of discretion' means that the circuit court 'has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any

mistake of law.'" *Ellis v. Commonwealth*, 68 Va. App. 706, 711 (2018) (alteration in original) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)).

Although the admission of evidence is normally subject to abuse of discretion review, the higher *de novo* standard is applied in the context of alleged violations of constitutional rights. *See Volkswagen of Am., Inc. v. Smit*, 279 Va. 327, 335 (2010). When a criminal defendant challenges the admission of evidence on Confrontation Clause grounds, we review the alleged violation of constitutional rights *de novo*. *Robertson v. Commonwealth*, 61 Va. App. 554, 559 (2013) (*en banc*) (citing *Crawford v. Commonwealth*, 281 Va. 84, 97 (2011)).

In a sufficiency case, we defer to the trial court's factual findings unless they are "plainly wrong or without evidence to support [them]." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The trier of fact is required "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). There was sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496-97 (2015)). Just because another trier of fact "might have reached a different conclusion" about what the evidence showed does not mean that this "[C]ourt [can] say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (first alteration in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

III. ANALYSIS

A. *Introduction of the Transcript of Prior Testimony*

Tyler argues that the transcript of Moore's testimony was admitted erroneously. First, he argues that Moore was not unavailable as required by Virginia Rule of Evidence 2:804(a) for

former testimony to be admissible under Virginia Rule of Evidence 2:804(b)(1). Second, he argues that his right of confrontation was violated when the trial court admitted the transcript of Moore's preliminary hearing testimony. We disagree.

First, Tyler argues that the transcript was not admissible under Virginia Rule of Evidence 2:804 because the Commonwealth did not exercise due diligence in attempting to secure Moore's presence at the April 5 trial date. Certain hearsay statements can be admitted at trial, including former testimony, if "the declarant is dead or otherwise unavailable as a witness." Va. R. Evid. 2:804(a). "Where unavailability is premised upon a witness'[s] absence from trial, the party offering the prior testimony must demonstrate the exercise of due diligence and reasonable efforts to obtain the presence of the witness."[3] *Morgan v. Commonwealth*, 50 Va. App. 369, 375 (2007). The trial court must determine, in its discretion, whether the party seeking to introduce the evidence satisfied its burden of showing it exercised due diligence to secure the witness's attendance. *Cooper v. Commonwealth*, 26 Va. App. 537, 542 (1998) (citing *McDonnough v. Commonwealth*, 25 Va. App. 120, 127 (1997); *Wise Terminal Co. v. McCormick*, 107 Va. 376, 379 (1907); *Doan v. Commonwealth*, 15 Va. App. 87, 102 (1992)). In a particular case, we may "agree that the efforts of the [party offering the statement] do not measure up to a high degree of diligence, but it is well settled that the sufficiency of the proof to establish the unavailability of a witness is largely within the discretion of the trial court." *Burton v. Oldfield*, 195 Va. 544, 550 (1954).

"Due diligence is that amount of prudence 'as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances.'" *McDonnough*, 25 Va. App. at 128 (quoting *Black's Law Dictionary* 457 (6th ed. 1990)). "Due

---

[3] We do not consider whether a subpoenaed witness who deliberately absents herself from trial can be deemed "unavailable" for purposes of the prior testimony exception to the hearsay rule because this issue was not raised in this appeal.

diligence requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted." *Cooper*, 26 Va. App. at 542 (quoting *McDonnough*, 25 Va. App. at 129). "We hold, however, that due diligence requires, at a minimum, that a party attempt to subpoena the witness or provide a reasonable explanation why a subpoena was not issued." *McDonnough*, 25 Va. App. at 129. Relying on the other side to subpoena a witness is not due diligence. *Dean v. Commonwealth*, 30 Va. App. 49, 57 (1999).

We have upheld the rulings of various trial courts finding that a witness was unavailable. In one such case, "the Commonwealth promptly issued a subpoena to [the victim-witness] at his last known address that was returned 'not found' and a notation on the subpoena indicated [he] no longer resided at the address." *Harris v. Commonwealth*, 52 Va. App. 735, 749 (2008). Officers "repeatedly visited [the victim-witness's] last known address," "question[ed] the residents and family members as to [his] whereabouts and whether he planned to return to Virginia," and contacted international authorities to try to learn the victim-witness's whereabouts. *Id.* Under those circumstances, we held that the facts proved the victim-witness was unavailable. *Id.* at 750. In another case, we affirmed a ruling that a witness was unavailable because she was deported before trial despite the Commonwealth's efforts to delay her deportation. *Morgan*, 50 Va. App. at 375-79.

Other decisions provide examples of cases in which the unavailability of a witness was not proved. For example, we upheld a trial court's finding that a defendant failed to prove a witness was unavailable because he failed to subpoena her, "never made any attempt to locate [her] in person at her place of employment," and "relied on [her] to contact him rather than attempting to locate her in [another] area." *Bennett v. Commonwealth*, 33 Va. App. 335, 349 (2000) (*en banc*). In another case, we reversed a trial court's finding of unavailability where the

- 8 -

Commonwealth failed to subpoena the witness even though the police attempted to locate the witness many other ways. *McDonnough*, 25 Va. App. at 127-31.

Here, the Commonwealth first learned it might have trouble securing Moore's presence at trial around March 4. Moore spoke with the prosecutor on March 1 and "did not indicate any reluctance about continued participation." Moore's absence on the January 27 trial date did not alarm the Commonwealth because it knew in advance that the trial would be continued, and Tyler admits on appeal that before the March 4 date, Moore "did not miss any court dates." Following her absence on the March 4 trial date, the Commonwealth called her three times but received "a busy signal or a message that [the phone] was unable to receive the call." The Commonwealth also posted service to her residence. After the March 17 trial date, it again posted service to her residence. Before March 17, it filed a domestic violence information request and sent police officers to make contact with her at her house. When the officers did not make contact with her directly, the Commonwealth still expected her to respond if she still lived there because she had previously been prompted to reach out to the Commonwealth after police visited her residence to re-establish contact. After March 17, it again subpoenaed her by posting service to her residence, attempted to call her, and asked investigators to access their government databases to discover any updated contact information.

These efforts demonstrate that the Commonwealth met the most basic requirement of requesting service of process, which it attempted three times. *See McDonnough*, 25 Va. App. at 129. It also employed additional methods that were reasonably calculated to try to secure Moore's presence, including sending the police to her last known address, *see Harris*, 52 Va. App. at 749, calling her last known telephone number, *cf. id.*, asking investigators to search their government databases for any new contact information for the witness, *cf. id.* (questioning

family members concerning a witness's whereabouts), and filing a domestic violence information request, *cf. id.*

Tyler argues that these efforts were not enough because the Commonwealth never contacted the friend who accompanied Moore to the hospital, did not employ social media in its search, and never contacted the Virginia Employment Commission in hopes of finding a current work address. The question is whether, given all the other steps the Commonwealth took, it was reasonably diligent despite these unexplored avenues. It is irrelevant whether these proposed steps would have actually revealed Moore's location or if she would have been willing to testify once found and notified of the court dates. All that matters is whether the trial court, when it considered the circumstances as they existed on the day of trial, abused its discretion.

Tyler's argument rests on the proposition that despite efforts to locate a witness and secure her attendance at trial, the failure to employ additional, viable investigative steps prevents the trial court from finding that the Commonwealth exercised due diligence. There is some support for this position. The use of a subpoena is considered so basic and yet so powerful that failure to issue a subpoena is almost a *per se* failure to exercise due diligence. *McDonnough*, 25 Va. App. at 129. The issuance of a subpoena to a witness's last known address which is later returned marked "not found" is sufficient to show due diligence if the party seeking to introduce the hearsay takes whatever additional investigatory steps a reasonable and prudent person would take under the circumstances to secure the witness's attendance at trial. *See Harris*, 52 Va. App. at 749.

Under *Harris*, we hold the trial court did not abuse its discretion[4] because "[d]ue diligence requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted." *McDonnough*, 25 Va. App. at 129. The Commonwealth sought to find Moore "where it is most likely [she] would [have been] found": at her residence and through the phone number she previously used to communicate with the Commonwealth. *See Wise Terminal Co.*, 107 Va. at 379. The Commonwealth also made reasonable efforts to discover through investigators and victim advocates whether she had relocated.

Second, Tyler also contends that the cross-examination of Moore at the preliminary hearing that yielded the transcript introduced at trial was inadequate and that the resulting testimony was unreliable. Tyler cites *Fisher v. Commonwealth*, 217 Va. 808 (1977), which involved a Confrontation Clause challenge. We therefore treat both his argument below and on appeal, as well as his assignment of error, as adequately raising a Confrontation Clause argument. Reviewing the trial court's decision *de novo*, *Robertson*, 61 Va. App. at 559, we do not agree with Tyler that the prior testimony was inadmissible under the Confrontation Clause.

The Confrontation Clause generally[5] forbids testimonial hearsay from being introduced against the defendant in a criminal trial unless the declarant is subject to cross-examination about it or the defendant had a prior opportunity to cross-examine the declarant about it. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) (overruling *Ohio v. Roberts*, 448 U.S. 56 (1980)). After

---

[4] The defendant requested a continuance to allow the trial court to make a final determination on whether the preliminary hearing transcript was admissible, but neither the defendant nor the Commonwealth requested a continuance to allow more time to secure Moore's presence at trial. When asked, the defendant specifically said he wanted a continuance only to allow more time for the trial court to make a decision about the admissibility of the transcript, not for the purpose of securing Moore's attendance.

[5] The United States Supreme Court has recognized exceptions for dying declarations and held that a defendant can forfeit the right to raise the Confrontation Clause by wrongfully procuring the witness's unavailability. *Giles v. California*, 554 U.S. 353, 358-59 (2008) (citations omitted).

*Crawford*, there is no place for a reliability analysis as an end run around the Confrontation Clause.[6] *Hodges v. Commonwealth*, 272 Va. 418, 434 (2006); *cf. Maryland v. Craig*, 497 U.S. 836, 845-47 (1990). All that is required under the Confrontation Clause is that the defendant have an adequate opportunity to cross-examine the witness. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (citing *Roberts*, 448 U.S. at 73 n.12). "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (citing *Roberts*, 448 U.S. at 73 n.12); *see also Alvarez Saucedo v. Commonwealth*, 71 Va. App. 31, 45 (2019) (quoting *Abney v. Commonwealth*, 51 Va. App. 337, 350 (2008)). The opportunity to examine a witness during a preliminary hearing satisfies this requirement, even if the defendant later wishes the questioning had been more thorough. *Longshore v. Commonwealth*, 260 Va. 3, 3-4 (2000). Because Moore was present at the preliminary hearing and subject to cross-examination by Tyler's attorney, his right of confrontation was fully protected and he cannot now complain because he wishes the attorney would have probed Moore's testimony more thoroughly.[7] *See Massey v. Commonwealth*, 67 Va. App. 108, 128-31 (2016).

## B. *Sufficiency of the Evidence*

Tyler next argues that there was insufficient evidence to convict him of strangulation. He primarily maintains that Moore's testimony was inherently incredible and that the

---

[6] A reliability analysis is appropriate where the defendant raises a due process right of confrontation in probation proceedings. *See Johnson v. Commonwealth*, 296 Va. 266, 275-76 (2018) (citing *Black v. Romano*, 471 U.S. 606, 610, 612 (1985); *Henderson v. Commonwealth*, 285 Va. 318, 327-28 (2013)).

[7] Tyler has not raised a challenge to his attorney's effectiveness, and even if he had done so we could not address it here. *See Vay v. Commonwealth*, 67 Va. App. 236, 260 (2017) (citation omitted); *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001) ("Claims raising ineffective assistance of counsel must be asserted in a habeas corpus proceeding and are not cognizable on direct appeal." (citations omitted)).

Commonwealth did not "corroborate her story through further investigation." We disagree and conclude the trial court's decision was neither plainly wrong nor without evidence to support it.

Although on appeal Tyler argues that Moore's testimony was inherently incredible, he did not raise this argument to the trial court. Under Rule 5A:18, to be preserved, an objection must be "stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Neither exception applies.[8] Defense counsel argued that Moore's testimony was impeachable by inconsistent statements. But, as we have held, "the mere fact that a witness'[s] testimony may have been impeached does not necessarily render the testimony inherently incredible." *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) (citing *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "Thus, pointing out that [Moore's] testimony had been impeached" or was inconsistent with prior statements and physical evidence "is not the same as arguing that the testimony was inherently incredible as a matter of law such that it was 'unworthy of belief or that the jury should not be permitted to weigh [Moore's] credibility.'" *Id.* at 306-07 (quoting *Commonwealth v. Bass*, 292 Va. 19, 33 (2016)).

Tyler's sufficiency argument, though properly raised, fails. The Commonwealth is not required to produce all the evidence that it has—it only needs to present enough to justify the

---

[8] Even if we concluded this argument was properly preserved or an exception applied, we would reject it. Testimony is inherently incredible if it is "so manifestly false that reasonable men ought not to believe it" or if it is "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Internal contradictions do not necessarily render a witness's testimony inherently incredible. *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). The original lead detective testified that he took two statements from Moore several days apart and the statements were consistent with each other. Although there were parts she left out of her original statements—or, perhaps more accurately, more details were elicited during the questioning by counsel at the preliminary hearing—such gaps and minor discrepancies as are evident in the record are just small gaps and minor discrepancies, not major inconsistencies that would allow us, on appeal, to find that Moore's preliminary hearing testimony was inherently incredible.

conviction. *See Holloway v. Commonwealth*, 55 Va. App. 609, 618 (2010) (citing *Dukes v. Commonwealth*, 227 Va. 119, 122-23 (1984)). Just because the Commonwealth did not subpoena the friend who allegedly overheard the entire incident over the phone does not mean that there was insufficient evidence.

Despite the inconsistencies and discrepancies, which must be resolved in favor of the Commonwealth as the party that prevailed below, there was sufficient evidence of strangulation. Moore's testimony was that Tyler put his hands around Moore's neck and choked her to the point she could "not really" breathe. The photographs showed bruises and scratches on her neck and chest. Together, the photographs and testimony provided enough evidence for the trial court to conclude that Tyler "impede[d] the . . . respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person." Code § 18.2-51.6.

## IV. CONCLUSION

We hold that the trial court did not abuse its discretion in concluding the Commonwealth exercised due diligence to locate Moore and secure her attendance at trial. Therefore, the preliminary hearing transcript was admissible under Virginia Rule of Evidence 2:804 and not barred by the Confrontation Clause. Further, the evidence was sufficient to convict Tyler of strangulation. Accordingly, we affirm.

*Affirmed*.