# COURT OF APPEALS OF VIRGINIA

## Record No. 1553-24-1

JAYQUANE D. PERRY

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Opinion Issued April 14, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
David W. Lannetti, Judge

(B. Thomas Reed, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Brooke I. Hettig, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION
## PER CURIAM

A Norfolk City jury convicted Jayquane D. Perry of maliciously shooting into an occupied vehicle, attempted malicious wounding, two counts of attempted abduction, conspiring to commit abduction, and three counts of using a firearm in the commission of a felony.[2] By final order entered on March 10, 2023, the trial court sentenced him to 48 years of incarceration with 34 years suspended.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] The final sentencing order erroneously states that Perry was convicted of one count of abduction and one count of attempted abduction. The record reflects that he was convicted of two counts of attempted abduction. We remand the case to the trial court for the limited purpose of correcting this clerical error. *See* Code § 8.01-428(B) (governing correction of clerical errors by the trial court).

On appeal, Perry challenges the trial court's ruling that one of the victims was unavailable to testify at trial and admitting his preliminary hearing testimony under the hearsay exception in Virginia Rule of Evidence 2:804(b)(1). For the following reasons, we affirm the trial court's judgment.[3]

## BACKGROUND[4]

*Events of July 31, 2021*

On July 31, 2021, Ronald Tanner called Alexander McIntyre and asked for a ride to the bank. McIntyre often helped Tanner—who was 76 years old—with errands and chores. After McIntyre drove Tanner to the bank, McIntyre took him to a residence on 27th Street so Tanner could speak to another friend. McIntyre remained in his vehicle and spoke on the phone.

McIntyre then saw Tanner walk around the corner of the building with Perry and Michael Cherry.[5] Perry wore an assault rifle on his chest and Cherry held a handgun and pulled Tanner by his shirt. Tanner fell and yelled to McIntyre for help. McIntyre started to exit the vehicle but stopped when Perry brandished the assault rifle at him. McIntyre lowered the window and admonished Perry to let Tanner go.

Perry and Cherry ordered McIntyre to exit the vehicle, warning that they were "not playing." McIntyre did not comply. Perry tried to shoot McIntyre, but his weapon jammed.

---

[3] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[4] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Stillwell v. Commonwealth*, 80 Va. App. 278, 280 n.1 (2024) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). "On appeal, we discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Id.*

[5] McIntyre recognized Perry and Cherry from the neighborhood.

- 2 -

McIntyre then drove away.  As he did so, Perry successfully fired the assault rifle, discharging multiple rounds and striking McIntyre's vehicle at least once.

Later that day, Detective Kyle Phillips, the lead investigator in this case, interviewed McIntyre and Tanner at the police station.  Detective Phillips examined McIntyre's vehicle and photographed damage that could have been caused by bullets.

*Pretrial proceedings*

The Commonwealth tried Perry and Cherry separately; Cherry's case went to trial on July 5, 2022.  Tanner did not testify in Cherry's case.  The trial court in that case found that Tanner was unavailable under Rule 2:804(a) and permitted the Commonwealth to read his preliminary hearing testimony as evidence.

The court scheduled Perry's trial for August 2, 2022.  On July 19, 2022, the Commonwealth moved to declare both McIntyre and Tanner unavailable witnesses in Perry's case and admit their preliminary hearing testimony under Rule 2:804(b)(1).  The Commonwealth averred that "[a]t the time of the preliminary hearing, Tanner was often homeless but kept in contact with McIntyre" and Detective Phillips.  But at the time of filing, the Commonwealth's "efforts to contact" McIntyre and Tanner were unsuccessful.

The trial court began a motion hearing on July 26, 2022, but continued it to the morning scheduled for trial, August 2.  Detective Robert Gray testified that he had attempted to serve subpoenas on McIntyre and Tanner four times between July 21 and July 29.  The subpoenas for Tanner and McIntyre both listed the same address on 26th Street; Tanner's subpoena also listed an apartment number.[6]  Each time, he knocked on the door and rang the smart doorbell.  He never

---

[6] Detective Gray confirmed that the structure at that address was in fact a single-family residence.

received a response, and, after the fourth attempt on July 29, he posted the subpoenas on the front door.

Detective Phillips testified that he encountered Tanner by coincidence the previous evening at a residence on 29th Street while investigating an unrelated shooting. Detective Phillips spoke to Tanner for 10 to 15 minutes and told him that he needed to come to court on August 2 for Perry's trial. Detective Phillips then contacted the prosecutor, who spoke with Tanner by speaker phone. But Detective Phillips did not attempt to secure a new subpoena to serve on Tanner.

After the trial court heard the parties' arguments, it considered continuing the trial to allow additional time to locate McIntyre and Tanner. McIntyre then arrived at the courthouse. The trial court gave the Commonwealth a choice: it could proceed with a jury trial that day with McIntyre's testimony but without Tanner's; or it could continue the trial and attempt to serve Tanner with a subpoena at the address where Detective Turner saw him the previous evening.

The Commonwealth chose to proceed that day with only McIntyre's testimony. But defense counsel, having felt the onset of flu-like symptoms as the proceeding progressed, moved to continue the trial. The trial was continued until October 27. Before adjourning the proceeding, the trial court placed McIntyre under oath and elicited his promise to return on October 27. The trial court informed McIntyre that if he did not appear that day, he could be found in contempt and jailed.[7]

*Trial proceedings*

On the day of trial, McIntyre appeared but Tanner did not. The trial court deferred the Commonwealth's motion to declare Tanner unavailable, determining that it would address the

---

[7] During McIntyre's colloquy with the trial court, Perry stated that McIntyre was "scared." After the trial court dismissed McIntyre, Perry told McIntyre: "I am going to make sure you don't come, bitch. Yeah." The bailiff admonished Perry but Perry repeated: "I am going to make sure you don't come." The trial court warned Perry that he was "about to be found in contempt of court," and if he "continue[d] to threaten witnesses in open court," he "r[an] the risk of a future jury being advised of [his] threats."

- 4 -

issue when it was "time for [Tanner's] testimony." The trial court proceeded with jury selection, opening statements, and McIntyre's testimony.

After McIntyre's testimony, the Commonwealth renewed its motion to declare Tanner unavailable and admit his preliminary hearing testimony. Detective Phillips testified outside the presence of the jury that he personally served Tanner with a subpoena for the October 27 trial date on the afternoon of August 2. Tanner told Detective Phillips that he felt scared and that he "was going to be in Florida." Notwithstanding Tanner's statements on August 2, Detective Phillips believed that he was "in the city" on the day of trial.

The Commonwealth's victim advocate, Tracey Buyrns, testified that, before she arrived in court, she called a person who identified himself as Mr. Tanner to remind him to come to court. He sounded "groggy" and said that he had been sleeping. He then stated that he did not "have any way to come." Buyrns responded that she could arrange a ride for him, but he declined to give his location and reiterated that he did not know if he could come.

The Commonwealth asserted that it had made every reasonable effort to bring Tanner into court to testify. Perry responded that the Commonwealth must show that it was impossible to procure Tanner's live testimony. The trial court concluded that "there [was] probably enough" to declare Tanner unavailable. But out of an abundance of caution, the court issued a show cause order requiring Tanner to appear the next day. The Commonwealth represented that Detective Phillips would attempt to serve the order on Tanner that evening and provide him with a ride in the morning.

Tanner did not appear the next day. Detective Phillips testified outside the presence of the jury that the previous evening he went to the residence on 29th Street where he had located Tanner on August 2. Tanner was not there, and the residence appeared vacant and in the process of being renovated or demolished.

The Commonwealth renewed its motion to declare Tanner an unavailable witness under Rule 2:804(a). The trial court held that Tanner was unavailable and that the Commonwealth could introduce his sworn testimony from the preliminary hearing under Rule 2:804(b)(1).

The Commonwealth subsequently read Tanner's preliminary hearing testimony to the jury. In that testimony, Tanner averred that on July 31, 2021, McIntyre drove him to a boarding house on 27th Street. As he walked around the side of the building, Perry and Cherry exited. Perry held a rifle and Cherry had a pistol. Perry told Tanner: "Didn't I tell you don't come around here?" Tanner replied that he had not, and Perry ordered him to "[g]et in the house." Perry "nudg[ed]" Tanner toward the building and when Tanner resisted, Cherry pushed him down.

McIntyre then rebuked Cherry and Perry. Perry aimed the assault rifle at McIntyre and ordered him to "get in the house too." As Tanner tried to escape, he heard both guns fire.

The jury convicted Perry on all counts. Perry now appeals, asserting that the trial court abused its discretion by declaring Tanner an unavailable witness and admitting his former testimony under Rule 2:804(b)(1).

ANALYSIS

This Court reviews a trial court's evidentiary decisions for abuse of discretion. *Howard v. Commonwealth*, 74 Va. App. 739, 753 (2022). We will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019).

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Pulley v. Commonwealth*, 74 Va. App. 104, 118 (2021) (quoting Va. R. Evid. 2:801(c)). "[I]f evidence is hearsay, it 'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay."

- 6 -

*Jones v. Commonwealth*, 71 Va. App. 597, 604 (2020) (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 133 (2018)); *see* Va. R. Evid. 2:802.

Virginia Rule of Evidence 2:804 provides several hearsay exceptions that apply "where the declarant is dead or otherwise unavailable as a witness." Va. R. Evid. 2:804(a). Under Rule 2:804(b)(1), a party may offer an unavailable declarant's sworn testimony from a prior hearing "if it is offered in reasonably accurate form," the opposing party "had the opportunity to cross-examine the witness, and the issue on which the testimony is offered is substantially the same." Va. R. Evid. 2:804(b)(1). Here, Perry challenges only the trial court's determination that Tanner was unavailable.

"Unavailability is a threshold question, to be resolved before a court considers" whether a statement satisfies the requirements for former testimony. *Bailey v. Commonwealth*, 62 Va. App. 499, 507 (2013). "[T]he sufficiency of the proof [required] to establish the unavailability of a witness is . . . within the discretion of the trial [judge], and, in the absence of a showing that such discretion has been abused," this Court will not disturb the trial court's determination. *Id.* at 506 (first, third, and fourth alterations in original) (quoting *Bennett v. Commonwealth*, 33 Va. App. 335, 348 (2000) (en banc)).

"[T]here is no 'exhaustive list of the circumstances under which a declarant may be deemed "unavailable."'" *Morgan v. Commonwealth*, 50 Va. App. 369, 376 (2007) (quoting *Jones v. Commonwealth*, 22 Va. App. 46, 51 (1996)). But we have held that a "declarant is unavailable if the party seeking to introduce" the hearsay statement "has been unable by diligent inquiry to locate" him. *Bazemore v. Commonwealth*, 82 Va. App. 478, 496 (2024) (quoting *McDonnough v. Commonwealth*, 25 Va. App. 120, 127 (1997)); *see Bailey*, 62 Va. App. at 507; *Bennett*, 33 Va. App. at 348; *Jones*, 22 Va. App. at 51.

In this context, "due diligence" means the "amount of prudence" expected of and exercised by a reasonable person under the circumstances. *Morgan*, 50 Va. App. at 375 (quoting *McDonnough*, 25 Va. App. at 128). It "requires only a good faith, reasonable effort; it does not require that every possibility, no matter how remote, be exhausted." *Id.* (quoting *McDonnough*, 25 Va. App. at 129). Whether a party has exercised due diligence in seeking to procure the testimony of an absent witness "is a factual question that will be reversed on appeal only if it is plainly wrong or without evidence to support it." *Bazemore*, 82 Va. App. at 497 (quoting *McDonnough*, 25 Va. App. at 127).

We conclude that the trial court did not abuse its discretion by holding that Tanner was unavailable under Rule 2:804(a) and thereby admitting his preliminary hearing testimony under the hearsay exception in Rule 2:804(b)(1). Tanner did not appear for Cherry's trial on July 5, 2022, and the trial judge in that case found him unavailable. Ahead of Perry's August 2, 2022 trial date, Detective Gray attempted four times to serve him with a subpoena. Detective Phillips encountered Tanner by chance on the evening of August 1 and reminded him of the importance of coming to court the next day. But Detective Phillips did not have a subpoena with which to serve Tanner.

The Commonwealth was prepared to proceed with trial on August 2 without Tanner's live or former testimony. But the trial court granted Perry's motion for a continuance due to his counsel's illness. After court that same day, Detective Phillips located Tanner and personally served him a subpoena for October 27, 2022. Tanner demurred, stating that he felt afraid and may leave the state on or before the appointed day.

On the morning of October 27, a man who identified himself as Tanner to the victim advocate on the phone stated that he could not come to court, even after she offered to provide a ride for him. After starting the trial and taking McIntyre's testimony, the trial court signed a show cause

order directing Tanner to appear the next day. When Detective Phillips attempted to serve the order that evening, the house where he previously found Tanner in August was vacant.

Given these facts, the trial court's finding that the Commonwealth exercised due diligence in its attempts to procure Tanner's live testimony for trial was not plainly wrong. Despite its previous unsuccessful attempts, the Commonwealth personally served Tanner with a subpoena for trial on October 27, 2022. Detective Phillips reminded Tanner of the importance of appearing as a witness, but Tanner demurred.

When the victim advocate tried to convince Tanner to honor his subpoena and come to court on October 27, he again resisted, refusing her offer of a ride or to disclose his location. Rather than ruling on the Commonwealth's motion that day, the trial court deferred it an additional day and issued a show cause order that Detective Phillips tried to serve that night. But Detective Phillips could not locate Tanner at the residence where he previously served the subpoena. Only after Tanner failed to appear for the second day of trial did the trial court rule him unavailable and allow the admission of his former testimony. By this juncture, the trial court was justified in finding that the Commonwealth had exercised due diligence in attempting to secure Tanner's testimony at trial.

We reject Perry's assertion that *Sapp v. Commonwealth*, 263 Va. 415 (2002), compels a contrary result. *Sapp* involved materially distinct facts—in that case, the victim and a witness came to court on the day of the defendant's trial but refused to testify out of fear for their personal safety. *Id.* at 418. Although the trial court engaged the two reluctant witnesses in extended colloquies on the record, it neither ordered them to testify nor applied any meaningful "judicial pressure" to "test the resolve" of their refusal to do so. *Id.* at 425-26. Our Supreme Court held that the trial court abused its discretion by finding that the witnesses' testimony was unavailable under these circumstances. *Id.* at 427.

Tanner never appeared before the trial court in this case. Thus, the trial court could not ask Tanner whether he refused to testify and if so, why. Nor could the trial court directly order him to testify or otherwise apply "judicial pressure" to grease the testimonial wheels.[8] *See id.* at 425-26. Accordingly, our review of the trial court's finding focuses on the reasonableness and prudence of the Commonwealth's actions, not Tanner's subjective reasons for not complying with the subpoena duly served on him.

For the above reasons, the trial court's finding that the Commonwealth exercised due diligence in seeking Tanner's testimony was not plainly wrong. *Bazemore*, 82 Va. App. at 497. Thus, the trial court did not abuse its discretion by finding that Tanner was unavailable under Rule 2:804(a) and admitting his preliminary hearing testimony under Rule 2:804(b)(1).

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment, but remand the case to correct the clerical error in the sentencing order.[9]

*Affirmed and remanded.*

---

[8] By contrast, the judicial pressure that trial court exerted on McIntyre at the August 2 hearing resulted in his returning to testify at trial.

[9] *Supra* n.1.

- 10 -